# Bryson *against* Myers.

One who purchases real estate which is encumbered by judgments, which he agrees to pay out of the purchase money, and afterwards discovers another judgment which he did not agree to pay, may take an assignment of the judgments paid by him, in order to protect himself from the payment of the judgment which he did not agree to pay. And if the latter judgment creditor proceed to sell the estate by execution, and the money be brought into court for appropriation, the assignee of the first judgments will be entitled to the money.

ERROR to the Common Pleas of *Cumberland* county.

This was an issue directed by the court to try the right to the proceeds of the sale of the real estate of George Eppley by the sheriff to Jacob Myers, the defendant, for $370.

The judgments were, as appeared by the record,

1st. John Shoff *v.* George Eppley, Rl. Dt. $250.

Interest from 23d of March 1837. Entered 29th of May 1837.

2d. Samuel Eberly *v.* Same, Rl. Dt. $45.

Interest from 8th of August 1837. Entered 1st of September 1837.

On the 16th of March 1840, there was filed a written assignment of this judgment by the plaintiff to Jacob Myers, purporting to have been dated 1st of April 1839.

3d. Thomas B. Bryson *v.* Same, Rl. Dt. $66.

[Bryson v. Myers.]

Interest from 30th of July 1838. Entered 11th of August 1838. Upon this judgment the land was sold.

John Shoff affirmed. There was two years' interest on my judgment paid by Jacob Myers; paid about 1st of April 1839.

Cross-examined—At the time Myers paid me, he said he wanted an assignment of this judgment. I did assign the judgment to him; the whole of it.

In chief.—This is the assignment of the judgment referred to.

Assignment read; dated 14th of November 1840.

Witness, again. At the time he paid me the interest, I took him for pay. At the time he paid me the interest, he did not say anything about the assignment of it; he said he was going to pay the interest on the money.

Cross-examined.—When he satisfied me for the whole, he talked about an assignment. He said he paid the interest for himself, that he was going to pay me the whole amount, but not at that time just; and when he paid the balance, he asked me to transfer it. Paid me balance last fall, and I gave him this paper.

Samuel Eberly affirmed. Next April will be two years since my judgment was paid. Jacob Myers paid me. When he paid me the money, he paid it for himself. I gave him a receipt. He paid for himself because Myers had the title. I understood Eppley was agreed Myers should do with the judgments as he pleased. When he paid me the money, Myers told me I should enter satisfaction at a suitable time, when I came to Carlisle. Can't say how long, but some time after the money was paid, this assignment was given. Money was paid me about 1st of April 1839. Think this paper was not then executed.

Assignment of Samuel Eberly read; dated 1st of April 1839; filed in court 16th of March 1840.

Witness again—Cross-examined.—I think Eppley had told me Myers was to have the judgments. I know he was agreed. When Myers paid me the money, he spoke of satisfaction. I gave a receipt that time. Some time after, Myers gave me notice I should not enter satisfaction. We talked all in German.

In chief.—Jacob Rupp wrote the assignment. Myers told me he would get an assignment, and was getting Rupp to write it—he said the reason was, when he bought the house he was careless about it, and did not examine the office, and then he found out there was another judgment he was not aware of. I believe that is the reason the transfer was made. Myers has been in possession the last two years.

Biddle for defendant.

Deed from Eppley and wife to Jacob Myers, dated 28th of September 1838, acknowledged the same day for the same property sold; consideration, $380.

George Eppley affirmed. Myers and me had negotiated in writing. Myers was to give me $380. He gave me a note for the

[Bryson v. Myers.]

whole of it. It was to be paid all cash in the spring of 1839. After the making of the deed he gave the note. The note was for the whole $380. He was to pay me the balance that was over these notes of Eberly and Shoff; then he was to pay off as he wanted for himself. The only agreement was, he had bought the property, and was to pay me so much for it. We talked about the judgments. He was agreed to take the judgments, I was agreed to give them to him, and the men were willing to take him for them. The judgments were to be his, not mine. This agreement was better than two months before the deed was made. After the judgments were paid, the overplus he was to pay to me.

Cross-examined.—Eppley paid me $50.

Jacob Rupp affirmed. Myers went into posssession of this property last April a year, (1839.)

Before Myers paid the judgment to Eberly, he requested me to search the docket, if there were any other judgments except Shoff's and Eberly's. I did not examine. I advised him when he paid that judgment he should take an assignment. Some time after, I inquired if he took a transfer of the judgment. He showed me a receipt. I then told him that would not answer the purpose. I then told him he should bring me the certificate of Eberly's judgment, and I would draw an assignment for him. He was afterwards at my house, and he brought the certificate. I drew up the assignment I saw at the table; this is it; left it at my house for the purpose of getting it. When it was executed I told him it would answer the purpose.

I advised Myers as I have stated in relation to Eberly, the same as regards Shoff, and at the same time.

Samuel Eberly. Did not know any thing of Bryson's judgment. At the time Myers paid me, Myers told me Eppley said there was no other judgments against him but Shoff's and mine.

The court was respectfully requested to charge the jury on the following points.

1. If the jury believe that Myers purchased the property from Eppley in the fall of 1838, for a sum sufficient to pay all the judgments against it, including the plaintiff's, he has no equity now, and cannot avail himself of any arrangement then made to keep up the judgments of Shoff and Eberly, to protect him against the judgment of Bryson which he had the means of paying in his hands.

2. If Myers paid the judgments of Shoff and Eberly, or any part thereof absolutely, without asking or taking an assignment of them, he cannot afterwards in consequence of discovering Mr Bryson's judgment, obtain an assignment of them, and keep them unsatisfied.

3. If Myers paid the judgments of Shoff and Eberly, or any part thereof, they thereby became satisfied *pro tanto*, and nothing that he could afterwards do would revive them.

[Bryson v. Myers.]

4. That if there was no agreement between Shoff and Myers, and Eberly and Myers, when the judgments were paid, that they should still subsist, the plaintiff in the said judgments could not make any agreement afterwards by which they could be kept alive and unsatisfied for the use of Myers.

5. That if no agreement was made between Eppley and Myers at the time of the sale of the house, that he should keep the judgments alive for his protection, after he had paid them, they never could make such an agreement afterwards, if it affected anybody else.

The court thus charged the jury:

Hepburn, President.— The present issue was directed by the court for the purpose of determining the right of plaintiff to the money claimed by him from the proceeds of the sale of George Eppley's property. The facts are not complicated, and seem to be in substance these:—On the 28th of September 1838, Eppley sold his house and lot in Shiremanstown to Jacob Myers, for $380, took his note for the amount, and agreed to take as cash in payment of it, the amount of two judgment liens on this property due to Eberly and Shoff; and the balance of the note to be paid him in cash. At the time this deed was executed (28th September 1838,) you will recollect Bryson's judgment was a lien also on this property—being entered 11th of August 1838, Shoff's entered 29th of May 1837, for $250, interest from 23d of March 1837, and Eberly's entered 1st of September 1837, interest from the 8th of August preceding, for $45. These judgments being prior in time, of course are entitled to the money, unless the circumstances alleged by the plaintiff in this issue, entitle him to stand in their room to the extent claimed by him, $59.60. It is alleged by the plaintiff, first, (read his first point) Answer, I do not think so. The contract of Myers and Eppley was a perfectly fair one; and if Myers paid Eppley $50, as indicated by the testimony, in pursuance of his agreement, that he might perhaps have appropriated to much more advantage to himself by paying a lien creditor, it certainly did not affect that creditor's rights, and therefore cannot deprive Myers of any equity he would otherwise be entitled to, as between him and that creditor, standing precisely in the position he occupied previous to Myers's agreement. The payment to Eppley, made Bryson no better nor worse than he was before. The property in Myers's possession was bound to the same extent it was in Eppley's. We therefore answer this point in the negative.

Read second, third and fourth points.

Answer.—The jury will recollect the situation of these parties. Three judgments are entered of record against Eppley's property; a portion of one is paid, (the interest for two years on Shoff's) and all of Eberly's, by Myers, the purchaser. Some time after these payments were made, he gets an assignment of the judgments from

the plaintiffs, and produces them in court. The judgments were not satisfied on the record; they stood open against Eppley. The payments made by Myers, were made in pursuance of an agreement by which Bryson was not bound. He was made no worse by these judgments being transferred to Myers; and as between the plaintiffs in the judgments, Eppley and Myers, it was perfectly competent for them to keep these judgments in such a situation as would protect the person paying the money, if requisite to do so. The agreement under which Myers paid his money, has been destroyed by Bryson so far as he could do it, by using his lien to make his money, which he had a right to do. Can it then be, that the agreement is binding on Myers as between him and Bryson, after he has sold the property by virtue of his lien, for a sum not sufficient to reach his judgment, so as to enable him to turn round and claim the benefit of money paid by Myers, in pursuance of his and Eppley's agreement, and thus deprive the purchaser of both the property bought, and the equitable right of being substituted in the room of prior judgment creditors whom he paid to protect himself against a subsequent one? I think not. Myers, as the testimony strikes me, was going on in good faith to comply with his agreement. The plaintiffs in the judgments assented to take him for their payment; one actually received a portion of his debt, and the other the whole, when it is discovered that Mr Bryson's judgment was a lien against this property, and was not provided for in the agreement. The plaintiffs then assign their judgments, unsatisfied on the record, to Myers. Mr Bryson proceeds on his judgment, sells the property for $370, a sum not sufficient to much more than cover the prior judgments. Myers in pursuance of his assignment claims the money, to the amount of these judgments, and as I before intimated, we think he has a perfect right to do so. So far as I can see it affects the rights of no one; it is a matter of indifference to Bryson, whether the plaintiffs in the judgments, or Myers, claim the money.

Fifth point.— There could not be such an agreement made afterwards, if it affected anybody else. But as I before stated, it cannot make any difference to Bryson whether the plaintiffs in the judgments or their assignee claim the money. Bryson stood on his legal right, regardless of any arrangement between Eppley and Myers. He sold the property on his judgment for a sum not sufficient to reach it, and of course if we are right in law, there is nothing left for him.

Charge excepted to by plaintiff, and this bill sealed.

*Watts*, for plaintiff in error.
*Biddle*, for defendant in error.

The opinion of the Court was delivered by
Kennedy, J.—This was a feigned issue, ordered by the court

[Bryson v. Myers.]

below, for the purpose of determining the respective rights of the parties to receive the money arising from a judicial sale of a house and lot of ground, situate in Shireman'stown, as the property of George Eppley. The facts of the case, from the evidence, would appear to be, that George Eppley had been the owner of the house and lot anterior to the 29th of May 1837, and continued to be so until the 28th of September 1838, when he sold and conveyed the same by deed to Jacob Myers, the defendant. Previously, however, to this latter date, three judgments had been obtained against Eppley, which bound the house and lot at the time of sale. The first was entered on the 29th of May 1837, in favour of John Shoff, for two hundred and fifty dollars debt, with interest from the 23d of March preceding. The second, on the 1st of September 1837, in favour of Samuel Eberly, for forty-five dollars debt, with interest from the 8th of August 1837. And the third, on the 11th of August 1838, in favour of Thomas B. Bryson, the plaintiff in error, for sixty-six dollars debt, with interest from the 30th of July preceding. In treating for the purchase of the house and lot, Eppley told Myers of the judgments against him in favour of Shoff and Eberly, but said nothing of the judgment in favour of Bryson. It was finally agreed between them, that the price of the house and lot should be three hundred and eighty dollars; that Myers should give his note to Eppley for that sum, payable on the 1st of April 1839; with an understanding, however, between them, that Myers should pay Shoff the amount of his judgment, and Eberly the amount of his, out of the $380, and having done so, do what he pleased with those judgments. And the surplus of the $380, he was to pay to Eppley himself. The note was accordingly given by Myers to Eppley, and Eppley thereupon made a deed of conveyance of the house and lot to Myers. About the 1st of April 1839, Myers paid Shoff two years' interest on his judgment, about the same time fifty dollars to Eppley, and not long afterwards paid Eberly the amount of his judgment in full, taking a receipt for the payment of it; but shortly thereafter, upon Myers coming to a knowledge of Bryson's judgment, Eberly, as Eppley had agreed that Myers should do what he pleased with his judgment, assigned it to him. Shoff afterwards did the like with his judgment, upon his receiving from Myers the principal of his debt and some interest, which had accrued subsequently to the two years' interest previously paid. After this had taken place, Bryson proceeded on his judgment, had the house and lot seized and taken in execution, condemned to sale, and sold to Myers by the sheriff for $370, who brought the money thus raised into court for distribution. Myers, as the assignee of the Shoff and Eberly judgments, claimed to retain as much of the money as would satisfy them, while Bryson, on the contrary, claimed to have his judgment paid first out of the same, the fund not being sufficient to satisfy the whole amount of the three

judgments. Upon this state of facts, as they appeared to exist, without any doubt, from the evidence, the jury in conformity to the direction of the court, found in favour of Myers, the defendant below. The counsel of the plaintiff excepted to the charge of the court, and has assigned the same for error here.

Several points were submitted by the counsel of the plaintiff to the court below for their direction thereon to the jury. They may, however, all be comprised in the two following propositions: First, if Myers agreed to pay Eppley a price for the house and lot, sufficient in amount to satisfy all the judgments binding the same, he could not claim to protect himself against the payment of the fifty dollars to Eppley, which was part of the purchase money, under the assignment which he had obtained of the Shoff and Eberly judgments. Second, if Myers paid the judgments of Shoff and Eberly, or any part thereof, without requiring or taking an assignment thereof, at the time of doing so, and not until he discovered Bryson's judgment afterwards, and did this without any agreement made originally between Eppley and Myers, that the latter should take an assignment of them upon his paying them, the assignment taken by him could not avail against Bryson's judgment. The court, however, in effect, instructed the jury, that if Eppley concealed the existence of Bryson's judgment from Myers, at the time he sold to him, and afterwards until Myers had paid the fifty dollars to him, and had likewise paid a further portion of the price of the house and lot to Shoff and Eberly, on account of their judgments, Myers had, though without an original agreement to that effect, a right, after having been induced thus to pay by Eppley's making him believe that there were no judgments binding the property, except Shoff's and Eberly's, to take an assignment of the judgments from Shoff and Eberly, and to claim, by virtue thereof, the amount of these judgments out of the money arising from the sheriff's sale in preference to Bryson. In the direction thus given we can perceive no error. From the evidence, it is not very clear but what Myers, according to the original understanding that existed between him and Eppley, had a right to have an assignment of the Shoff and Eberly judgments: for Eberly testifies that, "Eppley was agreed Myers should do with the judgments as he pleased." And Eppley himself testifies, "We (meaning himself and Myers) talked about the judgments. He was agreed to take the judgments. I was agreed to give them to him, and the men (meaning Shoff and Eberly) were agreed to take him for them. The judgments were to be his, not mine." Now, it is not unreasonable to conclude from this testimony that Eppley was agreed from the first, that Myers, upon paying the judgments, should have the full benefit of them in any way that might be necessary to prevent Myers from being injured by paying the amount of them to Shoff and Eberly. If such were the understanding and agreement originally between

[Bryson v. Myers.]

Eppley and Myers, it is too plain to be questioned that the assignment of these judgments to Myers by the plaintiffs therein, in consideration of his having paid the amount thereof to them, would entitle him to stand in their shoes, and to receive the same money that would have been coming to them from the sheriff's sale, had they not been paid, nor assigned their judgments. Suppose, however, there were no such original understanding between Eppley and Myers, it is perfectly manifest, from the evidence, that Myers was deceived by Eppley in regard to the number and the amount of the judgments that were liens upon the house and lot. If Eppley did not expressly tell Myers that there were but the two judgments, Shoff's and Eberly's, he studiously concealed from him the existence of Bryson's judgment; and whether he did the one or the other, it was a fraud committed by him from which he ought and can not be permitted to claim any advantage. He by means of it got fifty dollars from Myers, the surplus of the three hundred and eighty dollars, the price of the house and lot, after deducting therefrom the aggregate of the Shoff and Eberly judgments; thus leaving the property in the hands of Myers liable to the payment of Bryson's judgment, without enabling Myers to discharge it in any way whatever, or even letting him know of it. It can not be supposed that Myers would have consented to be placed in this situation, had Eppley only informed him beforehand of the Bryson judgment. Can it then be doubted that Myers, as against Eppley at least, after having been thus fraudulently induced to part with his money to Eppley, was not justified in taking the assignment of the judgments of Shoff and Eberly as he did, for the purpose of protecting himself against loss, so far as it might be practicable to use them fairly in effecting this object. It cannot be pretended that Eppley, after doing what he did, could have required Myers to enter satisfaction upon the judgments so assigned, until he had first either satisfied Bryson's judgment, or obtained from Bryson a release of its lien upon the house and lot. Then why should Mr Bryson be considered in any better situation than Eppley himself. Although he be not chargeable with having participated in committing the fraud, yet there is no good reason why he should be permitted to claim a benefit from it, at the expense of Myers, as long as he parted with nothing to Myers, to enable or induce him to pay the judgments of prior date to his own. He had precisely the same security for his debt against Eppley after Myers obtained an assignment of the prior judgments that he had at any time before. It is not even pretended that he extended any indulgence to Eppley, in paying his debt, on account of the sale made to Myers of the house and lot. And, indeed, seeing no satisfaction was ever entered on Shoff's and Eberly's judgments, there would seem to be no ground for raising a presumption that any such indulgence ever could have been given. Neither do I believe that Bryson

[Bryson v. Myers.]

could have claimed a preference over those prior judgments, even if satisfaction had been entered upon them by the fraudulent procurement of Eppley, without his showing distinctly that he had given up or parted with some right, to which he was otherwise entitled, on account thereof. For unless he could show something of this sort, he could not be said to be prejudiced or placed in a worse situation by what was done, which cost him nothing, than he was in before. Why should he profit, then, without being in anywise injured, by the fraud of his debtor?

Judgment affirmed.