# Souder's Appeal.

1. When money is paid into court on a judgment and different persons claim to be owners of the judgment, the question is one of ownership and may be determined by the court or submitted to a jury at its discretion.

2. But if the ownership of the encumbrance arises in a proceeding for distribution, it may be determined in that proceeding as an incident of distribution; thus avoiding prolongation and circuity of litigation.

3. When a court of equity once obtains jurisdiction of a subject, it will comprehend and decide all incidental matters necessary to enable it to make a full and final determination of the whole controversy.

4. Money arising from a sheriff's sale was brought into court and referred to an auditor for distribution. He found that the fund was applicable to a judgment in favor of Souder. Lancaster alleged that the judgment had been given as security for a debt due him. *Held*, that the auditor under the Act of June 16th 1836, § 86, had jurisdiction to determine the ownership of the judgment.

5. An issue under the Act of 1836 is demandable of right, at any time before the decree.

6. When the request for an issue does not come in proper form, or embraces questions of law instead of fact, or when it is manifest the matter to be tried cannot affect the decision, the issue may be refused.

7. In the Orphans' Court the granting an issue is discretionary.

8. Souder claimed the whole fund in court for distribution; part of it was awarded to Lancaster, being all he claimed, and the remainder to Souder, which he took out of court. Souder was not estopped from contesting Lancaster's right to the part awarded to him.

March 30th 1868. Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Appeal from the Court of Common Pleas of *Delaware county:* No. 353, to January Term 1867.

This was a proceeding for the distribution of the proceeds of the sale of the real estate of Charles L. Powell and Joseph Campbell, trading as Powell & Campbell, sold by the sheriff in August 1865.

The amount of money brought into court for distribution was $4675.50. There were a number of judgment-creditors of Powell & Campbell who asked to be paid their respective claims out of the fund in court, and who also appeared before the auditor and pre-

sented their claims.    Edward A. Price, Esq., was appointed
auditor to report distribution.

On the 8th of April 1865 a judgment was entered in the Court
of Common Pleas of Delaware county in favor of Henry L.
Powell against Powell & Campbell for $5500, which on the same
day was marked to the use of Joseph W. Souder.    It was admitted
that the whole fund in court should be appropriated to this judgment.
It was claimed, however, by John Lancaster, that part of the
·consideration of the bond on which the judgment had been en-
tered was two notes, drawn by Powell & Campbell, endorsed by
H. L. Powell, and held by Lancaster, one for $1260.44, due March
28th 1865, the other for $1493.20, due April 24th 1865.    Lan-
caster alleged that the last note was made for H. L. Powell's ac-
commodation; that as it was approaching maturity, H. L. Powell
found he would not be able to meet it, and upon a conference
between Powell & Campbell, H. L. Powell and Lancaster, it was
agreed that the firm should give the bond on which this judgment
was entered, and by it the two notes held by Lancaster should be
taken up.

Souder denied these allegations, and asserted that the sum for
which the bond was given was made up entirely of the indebted-
ness of the firm to H. L. Powell.

Much evidence, which was altogether conflicting, was heard by
the auditor.    He reported the facts very fully, and returned the
evidence with his report, by which he sustained the allegations of
Lancaster, and, after deducting the expenses of audit, he awarded
to Lancaster $2814.22, and to Souder $1732.18.

Souder filed exceptions to the report for awarding any part of
the fund to Lancaster.

On the coming in of the report, Souder asked for an issue to
try whether the bond to H. L. Powell was taken by him on con-
dition that he would take up the notes held by Lancaster.

The court below (Butler, P. J.) denied the issue, overruled the
exceptions after an elaborate examination and discussion of the
facts and the law applicable to them, and decreed distribution in
accordance with the report of the auditor.

The part of the opinion relating to the issue is as follows:—

" Mr. Souder is not entitled to an issue. · He entered into a
protracted controversy before the auditor about the same matter
which he now asks to have submitted to a jury.    When the con-
test arose he might have requested the auditor to suspend pro-
ceedings; and had he done so, and then applied for an issue, he
would have been entitled to it.    But he chose to take his chances
before the auditor, and his application is now too late.    He need
not have submitted his case to that tribunal, but he elected to do
so, and must abide the result, except in so far as he may have re-
lief on his appeal to the court.    I consider this decided by Brad-

ford's Appeal, 5 Casey 513, and Sipe's Appeal, 2 Casey 176. The first of these cases, it is true, was in the Orphans' Court. But I do not think this materially weakens the authority. An issue there is matter of right, if applied for in time and under proper circumstances; and a refusal to grant it is subject to review above. The principle is again recognised in Benson's Appeal, 12 Wright 159. The application was there held to be in time. But the court shows that a party is not entitled to an issue under all circumstances. And this rule seems to be entirely reasonable. Why should a party have the opportunity of two trials? The auditor is appointed to hear the parties and decide the facts. He sits in the place of the court. The parties need not, however, go to trial before him. They can have a different tribunal if they desire it. But if they do go before him and submit their case to his decision, they should be regarded as waiving the right to a trial elsewhere. A different rule, to say the least, would lead to unnecessary vexation, delay and expense."

Afterwards, on the application of Souder, the court allowed him to take out of court the portion of the fund which had been awarded to him by the auditor. It was accordingly paid to him by the prothonotary.

Souder appealed to the Supreme court, and assigned for error the refusal to direct an issue, and in awarding any part of the sum to Lancaster.

*W. Darlington*, for appellant.—As to the issue he referred to Bichel *v.* Rank, 5 Watts 140; Trimble's Appeal, 6 Id. 133; Reigart's Appeal, 7 W. & S. 267. Bradford's Appeal, 5 Casey 513, was in the Orphans' Court. In Seip's Appeal, 2 Id. 176, there was great delay in asking the issue.

Lancaster's claim was in nature of a bill for specific performance as to personalty, which will not be decreed, he having a remedy at law: 2 Story's Eq., §§ 717, 717 a; Brightly's Eq., §§ 212, 213; Logue's Appeal, 10 Harris 50.

The effort is to establish a trust by parol: Brawdy *v.* Brawdy, 7 Barr 158; Greenlee *v.* Greenlee, 10 Harris 235; Fulton *v.* Hood, 10 Casey 374.

*W. S. Price* (with whom was *W. Ward*), for appellee.—The appellant is estopped by taking the money out of court: Crowell *v.* Meconkey, 5 Barr 168; Stroble *v.* Smith, 8 Watts 280; Landis *v.* Landis, 1 Grant 248; Adlum *v.* Yard, 1 Rawle 163.

The auditor had jurisdiction to determine between *equitable* claimants under the judgment: Act of June 16th 1836, § 86, Pamph. L. 777, Purd. 446, pl. 103; Bury *v.* Hartman, 4 S. & R. 178; Henry *v.* Brothers, 12 Wright 72-3; Worrall's Appeal, 5 Id. 524; Claason's Appeal, 10 Harris 359; Vierheller's Ap-

peal, 12 Harris 105; Betz v. Heebner, 1 Penna. R. 280; Donley v. Hays, 17 S. & R. 400; Armstrong's Appeal, 5 W. & S. 352; Coates' Appeal, 7 Id. 99.

The issue was properly refused: Act of 20th April 1846, § 2, Pamph. L. 411, Purd. 447, pl. 105; Mahler's Appeal, 2 Wright 220; Benson's Appeal, 12 Id. 159; Robinson's Appeal, 12 Casey 84; Bradford's Appeal, 5 Id. 513; Seip's Appeal, 2 Id. 176; Christophers v. Selden, 4 Id. 165.

The opinion of the court was delivered, May 9th 1868, by

AGNEW, J.—As this case stood when referred to the auditor, the question was one of distribution between lien-creditors. The sheriff was ruled to bring the proceeds of sale into court, and on the same day several lien-creditors moved for leave to take their claims out of the fund, and thereupon the auditor was appointed to make distribution. But the result before the auditor showed that the fund was applicable to the judgment standing in the name of Henry L. Powell, and that this judgment was claimed by different persons, to wit, by Lancaster, as the alleged *cestui que trust* of a portion of the judgment, and by Souder (the appellant) as the assignee of Henry L. Powell of the whole of it. It is clear that jurisdiction had fully vested in the auditor to make distribution according to the provisions of the Act of 1836, which gives a right to demand an issue for the trial of facts. The only question before us on this part of the case is, whether the auditor's authority ceased with his finding that the fund was distributable to the judgment of Henry L. Powell, or whether, having acquired jurisdiction, it extended to the determination of the rights of the claimants of this judgment. The right of Souder to demand an issue depends on the determination of this question. For if the decision of Lancaster's right to the money as *cestui que trust* of the Powell judgment does not belong to the question of distribution, but was one to be tried by the court after the auditor had awarded the fund to the judgment, it did not fall within the provision of the Act of 1836, and Souder could not demand an issue as a matter of right. It would then be purely discretionary with the court. When money is paid into court upon a judgment, and is claimed by different persons as owners of the judgment, the question is one of mere ownership, and may be determined by the court itself, or submitted to a jury at its own discretion. But if the ownership of the encumbrance arises legitimately in a proceeding to make distribution, there seems to be no good reason why it should not be determined in the proceeding itself, as one of the incidents of distribution, necessary to point out to the court or its officer making payment of the fund the proper person to receive it—thereby avoiding both prolongation and circuity of

litigation. When a court of equity once obtains rightful juris-
diction of a subject, it will comprehend within its grasp and
decide all incidental matters necessary to enable it to make a full
and final determination of the whole controversy, and thus to ter-
minate litigation while it facilitates the remedy: McGowin *v.*
Remington, 2 Jones 56. It is on this principle the Common Pleas
proceeds to determine many incidental matters necessary to be
ascertained, in order to make distribution, under the authority
given in the 86th section of the Act of 16th June 1836, to deter-
mine disputes concerning the distribution of money arising from
sales upon execution according to law *and equity.* It has there-
fore been held, that an auditor appointed to make distribution,
can settle an account between partners, to determine their respect-
ive interests in the subject of sale, in order to effect distribution
according to the equities of claimants in different rights: Kelly's
Appeal, 4 Harris 59; Vandyke's Appeal, 5 Id. 271; Cooper's
Appeal, 2 Casey 262. So parties for whom a judgment was held
in trust, were allowed to take the proceeds of sale against the
agreement of their trustee, that the judgment should be postponed
to a mortgage entered on the same day, upon the ground of equity
alone arising from the laches of the mortgagee to make known
to them his priority, whereby they had been induced to rest upon
the judgment as a security for their claims: Claason's Appeal,
10 Harris 359. In Vierheller's Appeal, 12 Harris 105, a plain-
tiff in a judgment was postponed to a junior lien-creditor, on
the ground that he was surety for the payment of the debt of the
latter: Worrall's Appeal, 5 Wright 524, is similar. See also
Himes *v.* Barnitz, 8 Watts 39, and Erb's Appeal, 2 Penna. R.
296. In Betz *v.* Heebner, 1 Penna. R. 280, where nine several
bonds were secured by one and the same mortgage, the court
determined in a question of distribution between the holders of
the several bonds by assignment of the mortgagee, awarding to
each a *pro ratâ* share of the proceeds on the principle of Donley *v.*
Hays, 17 S. & R. 400. The same principle was applied in a case
of distribution between a widow and her assignee, of a judgment
obtained for arrearages of interest charged upon real estate:
Mohler's Appeal, 5 Barr 418. See also Bryson *v.* Myers, 1 W. &
S. 420. It is the duty of an auditor making distribution, to
report the claims and persons to whom the money is to be paid,
that the court may, when the report comes in, decree distribution
accordingly, and order its officer to pay out the fund. When a
dispute springs up in the course of a distribution proceeding,
between claimants of the same encumbrance, there is the same
necessity to determine it, in order to report the party entitled to
receive the fund to be appropriated to it, as there is to determine
between the claims of different lien-creditors. It is most conve-

nient and just as necessary to prevent subsequent litigation and circuity of proceeding, and is a proper subject of equity. We are of opinion, then, that the dispute between Lancaster and Souder, as to the ownership of the fund applicable to the Powell judgment, fell within the scope of the auditor's authority in making distribution of the proceeds of sale. It was therefore a question belonging to the distribution regulated by the Act of 16th June 1836, and either party was entitled to demand an issue to try any fact necessary to determine his right to the fund.

An issue was demanded in writing by Souder, on the coming-in of the auditor's report, to try the fact, whether the judgment-bond was given to and accepted by Powell, on the condition of his paying the notes of the obligors held by Lancaster; and no objection appears to have been made to its form or effect. The court below denied the issue solely on the ground that the demand for an issue came too late. In this we think there was error.

An issue under the Act of 1836, and its prototype of 1827, is demandable of right, as numerous authorities declare: Bichel v. Rank, 5 Watts 140; Trimble's Appeal, 6 Id. 133; Reigart's Appeal, 7 W. & S. 267; Overholt's Appeal, 2 Jones 225; Benson's Appeal, 12 Wright 159. In Trimble's Appeal the demand was held to be in time when made after the evidence was in, the arguments closed, and when the court was about to pronounce its decision. The same was held in Reigart's Appeal. In Ross's Estate, 9 Barr 17, a lien-creditor was held not to be excluded from a fund by his neglect to present his claim to the auditor; justice could be done before final judgment and decree. Where the request does not come in proper form, or where it embraces questions of law instead of fact, or it is manifest that the matter to be tried cannot affect the decision, the demand may be refused: Robinson & Minis's Appeal, 12 Casey 81; Dickerson & Haven's Appeal, 7 Barr 255; Benson's Appeal, 12 Wright 159; Dougherty's Estate, 9 W. & S. 192. But the demand here was for the trial of a specific fact, essential to the determination of the right to the money, and falls within none of the exceptions; and it does not appear that there was any rule of the court below regulating the practice in such a case. Bradford's Appeal, 5 Casey 513, cited by the learned judge, was a case in the Orphans' Court, in which an issue is not of right, but lies in discretion. The issue ought to have been granted therefore by the court below, and the right to it derives force from the fact that it is very doubtful whether the trust for Lancaster was clearly proved.

We do not think that Souder was estopped from having an appeal, by his taking out of court the undisputed part of his claim to the judgment. That part was not claimed by Lancaster. It is only when a party sets up a claim inconsistent with the finding

of the report, that a taking under the report operates to estop him from asserting the adverse claim.

The decree of the court below is therefore reversed, a *procedendo* awarded, and the record ordered to be remitted for proceedings in accordance with the principles contained in this opinion.