## Magaw *versus* Garrett *et al.*

A mortgage, other than one given to secure the purchase-money of the mortgaged premises, recorded on the same day that a judgment is entered against the mortgagor, is not " prior to all other liens on the same property," and is divested by a sale of the premises under proceedings upon a subsequent judgment.

Where the record shows a judgment equal in point of time with the mortgage, to be a subsisting lien at the time of the sheriff's sale, and there is no proof of notice of its entire payment to the purchaser, he will take the premises divested of the lien of the mortgage.

ERROR to the Common Pleas of *Mercer county.*

This was a *scire facias* upon a mortgage by William A. V. Magaw against John P. Garrett and J. R. Mills, with notice to John

[Magaw *v.* Garrett.]

J. Spearman and Benjamin Spearman, terre tenants.   The facts of the case, and the points arising on the record, are fully stated in the opinion of his Honour Justice KNOX.

*Stephenson* and *Griffith*, for plaintiff in error, cited Act of 6th April, 1830, *Purd. Dig.* 231.   The learned judge decided that the judgment of Pearson being open on the docket, it continued a lien within the intendment of the Act.   A legacy is not on the docket at all, and yet is a lien: 9 *W. & Ser.* 103.   A judgment entered for the same debt would not divest the lien of the mort-gage : *Purd. Dig.* 232, pl. 91 ; 1 *Wh. Dig.* 1021, pl. 830.   Faber himself, who is the purchaser and defends here, procured a fund to be placed in Judge Pearson's hands to satisfy his judgment ; that was a virtual extinguishment of that lien.   Faber was the actor in the case, and had full notice of all the facts.   The mort-gage was not given to secure the creditors, but Magaw himself. The debt of Faber, under which it was sold, was no part of the mortgage debt.   The intention of the parties must control, and here the intention is plain—a security to Magaw, and not to the creditors of J. P. Garrett & Co.   If the amount of these debts had been paid to Magaw, the mortgage would have been satisfied ; or he could have released without the consent of the creditors.

*Stewart* and *Holstein*, contrà.—The Act of 1830 was an inno-vation upon the law as it then stood.   The policy of the law is to disencumber estates : 10 *Harris* 317.   The records are held to contain unerring information as to liens : 10 *Harris* 123, 359. The criterion is the lien docket : 7 *W. & Ser.* 200 ; 3 *Harris* 177 ; 3 *W. & Ser.* 233.   That it is not only necessary to pay, but to have the satisfaction entered, is clearly sustained by 10 *Barr* 472.

The purpose of the mortgage was twofold : to pay the creditors, and secure Magaw.   A payment to the creditors, against Magaw's consent, would have discharged the mortgage.   The mortgage was not part of the purchase-money of Magaw's interest sold to Mills, as is shown by him taking a separate judgment for that.

The opinion of the Court was delivered by

KNOX, J.—This was a *scire facias* on a mortgage, and the only question presented by the case is, Whether the lien of the mort-gage was divested by a sheriff's sale upon a judgment ?

The facts were these :—Garrett and Magaw owned the land in dispute, as tenants in common.   On the 8th of March, 1848, Magaw sold his interest in the land to Mills for the sum of $1000, for which a judgment-bond was given by Mills to Magaw, and entered in the Common Pleas upon the same day that the deed was delivered.   Garrett and Magaw had erected a furnace upon the property, and carried it on under the name of J. P. Garrett & Co.

[Magaw v. Garrett.]

At the time of the sale of the real estate by Magaw to Mills, the latter agreed to take the place of the former in the firm of J. P. Garrett & Co., and to keep Magaw harmless from the firm debts. In accordance with this agreement, Mills and Garrett executed and delivered to Magaw the mortgage in suit in the penal sum of $20,000, conditioned to pay to the creditors of J. P. Garrett & Co. all the debts then owing, and to keep Magaw, the mortgagee, harmless from said debts. This mortgage was recorded on the 8th of March, 1848, and on the same day a judgment for $1000, real debt, was entered in favour of John J. Pearson v. J. P. Garrett. Subsequently, Mills conveyed his interest in the mortgaged premises to Garrett. Thus the fee in the entire estate was in Garrett, encumbered by the judgment from Garrett to Pearson, also the one of Magaw against Mills, and the mortgage Garrett and Mills to Magaw.

Amongst the debts of J. P. Garrett & Co., which Garrett and Mills had agreed to pay, and which formed part of the consideration of the mortgage, was one in favour of E. & F. Faber, upon which judgment was recovered in the Common Pleas of Mercer county, on the 28th day of May, 1849, for the sum of $1433.94. Proceedings were had on this judgment, by which, in April, 1850, other real estate of J. P. Garrett was sold for the sum of $1100, and purchased by Judge Pearson, to whose judgment it seems the purchase-money was applicable, although no formal application of it was made to this judgment, or any other. After the sale of Garrett's individual real estate, the mortgaged premises were sold by the Faber judgment, and purchased by the plaintiffs in that judgment. The terre tenants defend under this sale to Faber.

Upon the trial it was alleged by the defendants that the lien of the mortgage was lost, 1st. Because, at the time of the sheriff's sale, the mortgage was not "prior to all other liens, except other mortgages, ground-rents, and the purchase-money due the Commonwealth," and that therefore the Act of April, 1830, did not prevent the sale from discharging the lien of the mortgage; 2d. That, as the Faber judgment was one of the debts against J. P. Garrett & Co., for the payment of which the mortgage was given to secure, a sale upon an execution issued upon that judgment would discharge the lien of the mortgage, whether it was or not prior to other liens.

The allegation of the plaintiff is, that the mortgage was given for the purchase-money of the real estate, and that therefore it was prior in lien to the judgments entered upon the same day; and that, even if this is not so, the judgment of Pearson v. Garrett was paid before the sale, which left the lien of the mortgage good against the one-half of the estate. It is also contended by the plaintiff that the Faber judgment was not connected with the mortgage in such a manner as to make a sale upon the one divest

VOL. I.—41

[Magaw *v.* Garrett.]

the lien of the other.  The Court of Common Pleas ruled the case in favour of the defendants.  Nine errors are assigned to the charge, but it is unnecessary to examine them in detail, as several of the assignments present substantially the same question.  Had the mortgage been given for the purchase-money of the real estate, it would have been preferred in its lien to the judgments, as it was recorded within 60 days of the purchase.  But there is no evidence upon this record to show that the mortgage was for purchase-money.  In the plaintiff's statement of the case, he avers that the mortgage formed part of the consideration for the sale of the realty.  This is denied by the counter-statement; and upon looking at the deed, which is printed only in the paper-book of the defendant in error, we find the consideration there stated to be $1000, and for this a judgment-bond was given by Mills to Magaw, as before mentioned.  There does not appear to have been any evidence given upon the trial tending to establish the plaintiff's allegation that the mortgage was for purchase-money, and consequently we cannot say that the Court erred in answering his first point in the negative.  Treating, then, the mortgage as upon an equality of lien with the judgments, it is clear that, as to the one undivided half, the sale divested its lien, for it is not pretended that the judgment of Magaw *v.* Mills was paid at the time of the sale.

How stands the case as to the Pearson judgment?  The record showed this to be a subsisting lien, neither paid nor satisfied.  It is said that the money made upon the sale of Garrett's individual real estate, together with the payments of interest which he had made, was sufficient to extinguish this judgment.  But had the purchaser of the mortgaged premises notice of its payment?  He knew that a fund had been raised by the prior sale of Garrett's property which was in the custody of the law; but, even if appropriated to the Pearson judgment, it was insufficient to satisfy it, and the legal effect of the sale upon the mortgage was the same if any portion of the judgment was unpaid.  That a purchaser at sheriff's sale is protected by the recording act was decided in Pennsylvania as early as 1809, in the case Hiester *v.* Fortner, 2 *Binney* 46, and reaffirmed as late as 1853, in Stewart *v.* Freeman, 10 *Harris* 120.  The record, in the absence of any notice to the contrary, is for him a safe guide, and he cannot be affected by evidence outside of the record, of which he had no notice.  One about to purchase real estate at public or private sale is not bound to make further inquiry as to the existence of encumbrances than what he may learn from the public records.  A secret lien will not be enforced against the estate in the hands of a *bona fide* purchaser without notice, and by parity of reasoning, payments of which he had no notice by record or otherwise, ought not to be used to prevent a sheriff's sale from divesting the lien of a mortgage.

[Magaw *v.* Garrett.]

As the record showed the Pearson judgment, at the time of the sheriff's sale, to be an existing lien, equal in point of time with the mortgage, and as there was no evidence tending to prove notice of its entire payment to the purchasers, the Court of Common Pleas properly held that the estate sold passed into the hands of the sheriff's vendees discharged from the mortgage lien.

There is some difference of opinion in this Court as to the other question, and as the case is fully disposed of by the points already discussed, it is unnecessary to add anything further.

Judgment affirmed.