# Schmidt & Friday's Appeal.

1. A judgment was entered by the prothonotary in pursuance of the terms of a judgment note for real debt, with costs of suit and attorney's commissions of five per cent. Execution issued for real debt, interest and costs, and "attorney's commissions, five per cent., $300," which last was endorsed upon the back of the writ. Defendant's real estate having been sold under the execution, a subsequent judgment creditor contested the payment out of the proceeds of the $300 commissions. *Held* (reversing the court below), that the attorney's commissions being a part of the judgment, their endorsement on the writ while informal was not material, and real estate having been sold in satisfaction of the judgment of which the commissions formed a part, they should be paid out of the proceeds.
2. McAllister's Appeal, 9 P. F. Smith 204, distinguished.

October 31st 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Appeal from the Court of Common Pleas, No. 2, of *Allegheny county*: Of October and November Term 1876, No. 154.

This was the appeal of Schmidt & Friday, from a decree of the court disallowing attorney's commissions.

The proceedings were these:—

Schmidt & Friday, who were the holders of a judgment note of Marker Rush for $6000, filed the same in the office of the prothonotary, and he, at their instance, entered judgment thereon in the following form:—

"D. S. B. $6000, interest from May 13th 1875. And now, May 13th 1875, a single bill filed, dated May 12th 1875, payable one day after date, and judgment entered thereon against the defendant for the sum of six thousand dollars, with costs of suit and an attorney's commission of five per cent., waiving inquisition, condemnation and exemption."

On the 15th of December 1875, the attorneys of appellants caused a writ of fi. fa. to be issued on this judgment, which had, inter alia, this endorsement:—

"Att's com. 5 per cent.,        .    .    .    .        $300.00"

By virtue of this writ the sheriff levied upon the real estate of Rush, and sold it on the 8th of January 1876, to Schmidt & Friday for $8100, and in the special return made by the sheriff was this clause:—

"To costs on this writ (which includes an attorney's commission of $300),        .    .    .    .        $398.70"

To this return William Suiram, a lien creditor of Rush, excepted, alleging that the sheriff erred in applying the sum of $300 to the payment of five per cent. attorney's commissions.

The court (White, A. J.) sustained the exceptions and disallowed the $300 commissions, under the decision in McAllister's Appeal, 9 P. F. Smith 204.

From this decree this appeal was taken.

*A. M. Brown* and *John S. Lambie*, for appellants.—The decree of the court below is not sustained by McAllister's Appeal, 9 P. F. Smith 204, and is at variance with the uniform practice of the state. The decision of this court in McAllister's Appeal establishes the right of a contract for attorneys' commissions in such cases, and expressly recognises the propriety of a reasonable percentage, such as was stipulated for in this case. There had been no trial here, as in Mahoning County Bank's Appeal, 8 Casey 158. Had defendant paid the debt before execution, no commission would have been earned or collected, but failing to pay, and being in default for months, the plaintiffs employed attorneys and proceeded to collect their debt, interest, attorneys' commission and costs, and the execution went out with the commission, liquidated at $300, as part of the judgment and not as costs. It is true the sheriff unnecessarily connected the costs and attorneys' commission in making his special return, but that simple irregularity should not defeat the legal right of the plaintiffs.

*David Reed*, for appellee.—When the appellee examined the judgment docket and schedule of liens, he found nothing to give him notice

of appellants' claims to commissions.  The first information he had of the claim to these commissions was long after the sale, and not until the sheriff made his special return.  Attorneys' commissions are no part of the costs.  They are not given by any statute. It is no more than an agreement by the debtor to allow the party, to whom the judgment is given, commissions to compensate him for what he may possibly be compelled to pay to an attorney for the collection of his claim.  If this be so, why should he not follow his warrant of attorney and liquidate the commissions in the judgment rendered ?  The judgment then would be notice to subsequent lien creditors of the amount of antecedent encumbrances.  The Act of February 24th 1806, Purd. Dig., p. 826, § 32, empowers the prothonotary to confess judgment for the amount which, from the face of the instrument, may appear to be due, and the defendant shall not be compelled to pay any costs or fee to the plaintiff's attorney when judgment is so entered.  This prohibition certainly would prevent the prothonotary from taxing on the writ, and the sheriff from collecting as costs any fee or compensation for the plaintiff's attorney.  The authority given by Rush was to confess *judgment for the debt and commissions ;* but instead of liquidating the commissions as part of the judgment, they were taxed upon the writ of execution.  This case is governed by Mahoning County Bank's Appeal, *supra.*  In that case as in this, the attorney's commissions were endorsed upon the writ ; they formed no part of the judgment. The court there held that the judgment was a unit ; that it cannot exist in distinct parts at one and the same time, so as to enforce the collection of these commissions by execution, when they are no part of the judgment, but simply endorsed on the back of the execution.  In McAllister's Appeal it was ruled that the attorney's commissions, being no part of the judgment in favor of the plaintiff, there was no power to enter a separate judgment in favor of the attorney.  As in this case, the judgment was there confessed for the debt, with attorney's commissions, and these commissions were endorsed on the writ of execution.

Mr. Justice PAXSON delivered the opinion of the court, November 13th 1876.

This record presents the single question whether the appellants were entitled to receive out of the proceeds of the real estate sold under their execution the sum of three hundred dollars, attorney's commissions, as against a subsequent lien-creditor.  The judgment of the appellants was entered by the prothonotary for the sum of $6000 real debt, with costs of suit and an attorney's commission of five per cent.  The execution of the appellants was issued for $6000, interest and costs, and "attorney's commission, five per cent., $300."  The latter was endorsed upon the back of the writ. The learned judge of the court below, upon the authority of

[Schmidt & Friday's Appeal.]

McAllister's Appeal, 9 P. F. Smith 204, held that the appellants were not entitled to the $300, and awarded it to the appellees, who were the next lien-creditors. The appeal in the case cited was taken by the attorney to the decree of the court disallowing the attorney's commissions. It was held by this court that he had no standing; that the commissions were included in the judgment of his client, and that the appellant had no authority to confess a separate judgment for the commissions, and had in fact confessed no such judgment. He had no assignment or order from the plaintiff in the judgment, and therefore no title to any portion of its fruits. This was the scope of the decision in McAllister's Appeal. The doctrine was there asserted upon the authority of Mahoning County Bank's Appeal, 8 Casey 158, that the attorney's commissions could not be collected as part of the costs. In that case the judgment had been liquidated upon a scire facias to revive, and the attorney's commissions were not included in the judgment. The court said they might have included them, but did not. An attempt was then made to collect the commissions by endorsing them on the back of the execution as a part of the costs. This, the court said, could not be done. Here the attorney's commissions are a part of the judgment. It is true they are not embraced in the body of the execution, but they are as much a part of the judgment as the interest, and as easily computed. Their endorsement on the writ, while informal, is not material. The real estate was sold in satisfaction of the judgment of which the commissions formed a part. No good reason has been shown why they should not be paid out of the proceeds.

It is proper to say that no question in relation to the judgment docket was before the court. Whether the judgment was so entered therein as to amount to notice to subsequent lien-creditors of the attorney's commission is a question that was not raised upon this record.

We think, therefore, that the learned judge erred in decreeing the $300 for attorney's commissions to the judgment of the appellees. It should have been awarded to the appellants.

The decree is reversed, at the costs of the appellees, and the record remitted for further proceedings.