## Indiana County Bank's Appeal.

1. The rights of those claiming to participate in the proceeds of a sheriff's sale are to be determined by their status as shown by the record at the time of the sale. All liens then on the land, except first mortgages and other fixed liens, are divested by the sale, and the lien holders are turned over to the proceeds. No lien upon the fund, and consequently no right to participate in its distribution, can ordinarily be acquired afterwards.

2. A fund for distribution arose from the separate sheriff's sales of the real estate of A., B. and C., in the order named. Afterwards another portion of the real estate of C. was sold, and the proceeds added to the fund for distribution. A joint judgment against A. and C. was paid out of this fund. It afterwards appeared by parol evidence before the auditor to distribute the fund that C. was principal in said judgment and A. only surety, and it was claimed that A. or his judgment creditors were entitled to be subrogated to the amount of said judgment against the proceeds of the real estate of C.: *Held*, that this could not be allowed as it would be inequitable thus to displace a creditor who, as the record showed at the time of the last sale, was entitled to the proceeds.

3. Douglass's Appeal, 12 Wright 223, followed.

October 21st 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas of *Indiana county*: Of October and November Term 1880, No. 161.

Appeal of the Indiana County Deposit Bank from the decree of the court distributing the proceeds of the sheriff's sale of the real estate of J. B. Morris, John Cary and John Couch.

The facts were found by the auditor, John Conrad, Esq., as follows:

"The real estate of the defendants out of which the fund for distribution was realized, was sold in the following order, to wit: October 24th 1879, sold 158 acres as property of J. B. Morris, to J. U. Gillespie, for $2306. October 24th 1879, sold 65 acres as the property of J. B. Morris, to J. U. Gillespie, for $600. October 24th 1879, property in Clayville, as property of J. B. Morris, for $155. October 24th 1879, sold 120 acres as the property of John Cary, to William Davis, for $2000. October 24th 1879, sold 200 acres as property of John Couch, to Indiana County Deposit Bank, for $2200. December 9th 1879, sold 160 acres as the property of John Couch, to Indiana County Deposit Bank, for $2605, which makes total amount for distribution, $9866. Of this $4928 was paid into court, but it was understood by the parties that, for the purpose of distribution, the entire amount should be considered in court.

"From the parol evidence produced before the auditor, the fact is established that in the judgment of Levi McGregor to use of J. U. Gillespie *v.* John Couch, J. B. Morris and Daniel Couch, No. 120, December Term 1876, John Couch is the principal debtor, and J. B. Morris is only bail, but the docket entries and the records

[Indiana County Bank's Appeal.]

do not show that fact in the entry of the case. Counsel for judgment-creditors claimed that, as J. B. Morris was only bail in the above-stated judgment, and the judgment was paid by sale of the real estate of J. B. Morris, he would be considered as subrogated to the rights of the plaintiff in the writ, and equity would apply the fund on judgments filed by J. B. Morris's creditors. Your auditor is of the opinion that J. B. Morris acquired no right to that fund, and, consequently, his judgment-creditors could acquire none except such as they had at the time of the sale of the property. Had he paid off the judgment before the sale the principle of subrogation contended for would undoubtedly be true, but in a distribution of proceeds of sheriff's sale, claims of lien-creditors remain as at time of sale, the liens being divested by the sale, the lien-holders are turned over to the proceeds, and no lien or right thereto can be afterwards acquired. : Douglass's Appeal, 12 Wright 223. Able arguments were made by counsel on both sides of the questions in issue, and numerous authorities were produced. But your auditor holds a secret equity of this nature could not be enforced. No lien-holders would be safe, and there would be nothing so certain as the uncertainty that would be occasioned by the adoption of such a principle. It cannot be said that J. B. Morris, the surety, has paid the judgment until this distribution is made and the report confirmed by the court. There is nothing in the opinion of your auditor to sustain the exceptions filed to the special returns, and they are, therefore, overruled."

Exceptions were filed to this report, when the court filed the following opinion :

"Four hundred and seventy-four dollars and seven cents of the fund raised by the sale of the real estate of Morris was taken to pay a debt in which Couch was principal and Morris surety. This would give Morris or his individual creditors a right of subrogation against Couch for the amount so paid.

" We understand the auditor to find as a fact that the real estate of the defendants was sold at the same time. The funds in the hands of the auditor are treated as real estate, and in the absence of some overpowering equity would have to be so applied as to extinguish liens according to their priority. Had the auditor commenced in his distribution with the funds raised by the sale of the real estate of Couch, the money raised by the sale of real estate of Morris would have been so applied as to pay exceptant's judgments. The equities of the parties should be carefully considered. The judgments of Gillespie v. Morris, 572 and 573 of September Term 1875, were entered some six months prior to the entry of the Indiana Bank judgments. The former judgments (so far as these funds are concerned) are against Morris alone. The latter judgments are against Couch, Cary and Morris. Out of the Morris fund $574.07 was taken to pay the judgment immediately prior to the Gillespie

judgment mentioned, in which Morris was but the surety of Couch. Under these circumstances in equity, Gillespie should be subrogated to the rights of plaintiff in judgment of Levi McGregor, for use, against Couch and Morris, No. 120, December Term 1879, and out of the funds raised by the sale of Couch's real estate, there should be applied to the judgment of Gillespie *v.* Morris et al., No. 572 and 573, September Term 1875, the sum of $574.07.

" The cases of Lathrop's Appeal, 1 Barr 512 ; Morris *v.* Oakford, 9 Barr 498, and Gearhart *v.* Jordan, 1 Jones 325, fully, as we think, justify the correction of the auditor's report."

A decree of distribution was made in accordance with this opinion, from which this appeal was taken.

*Stewart & Martin,* for appellant.

*White & Scott,* for appellee.

Mr. Justice STERRETT delivered the opinion of the court, November 2st 1880.

The separate real estate of J. B. Morris, John Carey and John Couch was sold by the sheriff in the order named and all on the same day, except a portion of Couch's property which was sold several weeks afterwards for $2605. The proceeds of these several sales, amounting in the aggregate to $9866, were distributed by the auditor among the respective lien-creditors in their order as they stood at the time of the sales. Out of the fund realized from the sale of Morris's real estate, he appropriated $574.07 to the payment of judgment in favor of McGregor, to use of Gillespie, against Couch and Morris, entered October 18th 1875, on the joint, and several note of the defendants. There was nothing upon the face of the record to indicate that the relation of the defendants to each other was not that of joint debtors ; and assuming, as creditors were bound to do, that they were both principals in the debt secured by the judgment, the correctness of the distribution made by the auditor cannot be questioned. It was, however, shown *aliunde*, on the hearing, that Morris was merely surety for Couch, and on this ground it was claimed that the amount thus taken out of the Morris fund to pay Couch's proper debt should, on the principle of equitable subrogation, be given to Morris's creditors, thereby diminishing to that extent the fund to which appellant, as a lien-creditor of Couch, looked for payment. The auditor refused to recognise the principle of substitution thus contended for by the creditors of Morris, but the court, adopting the opposite view, reversed the auditor in this particular, awarded the $574.07 to Morris's creditors and deducted the same from the distributive share of the appellant. This action of the court is substantially the only matter assigned for error.

[Indiana County Bank's Appeal.]

As was held in Douglass's Appeal, 12 Wright 223, the rights of those claiming to participate in the proceeds of a sheriff's sale are to be determined by their status, as shown by the record at the time of the sale. All liens then on the land, except first mortgages and other fixed liens, are divested by the sale and the lienholders are turned over to the proceeds. No lien upon the fund, and consequently no right to participate in its distribution can ordinarily be acquired afterwards. It was on this principle that the learned auditor proceeded in distributing the funds, and we are satisfied he was right. The only safe guide that lien-creditors can have in bidding at sheriff's sale of real estate in which they are interested, is the record as it stands at the time of the sale.

An examination of the records after the first sheriff's sales would show that the proceeds of those sales applied to the judgments in their order would nearly satisfy all the liens that were ahead of appellant's second judgment, so that when the sale of Couch's property took place in December following, appellant would have a right to assume that the proceeds of that sale, with the exception of a small amount, would be applicable to its second judgment which was nearly reached by the first sales; and thus relying upon the state of the record at that time, might well be governed by it in bidding at the last sale. As we have already seen, there was nothing on the face of the record to indicate that any right of subrogation existed, and in fact, none did exist. Morris, as surety of Couch, might have paid the debt before the sales, and upon satisfying the court as to the proper facts, might have been subrogated to the rights of the plaintiff in that judgment, but he did not do so then or at any other time; and the last sale took place without anything to warn appellant or other creditors that the proceeds of the sale would not be applicable to the judgments in their order as they then stood on the judgment-docket. Under such circumstances, it would be inequitable to permit Morris or any of his creditors claiming through him to displace a creditor who, as the record stood at the time of the last sale, was entitled to the proceeds. We think the principle upon which the auditor distributed the funds was correct, and his report should have been confirmed.

> Decree reversed, report of the auditor confirmed, and it is ordered and decreed that the funds be paid out in accordance therewith—the costs of this appeal to be paid by the appellee.