Colonial Trust Co., Trustee, *v.* Lincoln Drive
Apartments Corp.   Kenneth W. Moore,
Appellant.

Argued December 4, 1929.   Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, KEPHART, SADLER and
SCHAFFER, JJ.

*Walter B. Saul,* of *Saul, Ewing, Remick & Saul,* for appellant.—All questions as to conclusiveness of the judgment at a sheriff's sale are as between mortgagee and mortgagor, and have nothing to do with what the mortgagee does with the money when paid to him by the sheriff.

All questions as to equality of bidders at a sheriff's sale are as between the bidders themselves and the right to set the sale aside, and have nothing to do with what the mortgagee does with the money when paid to him by the sheriff.

The sole question in this case is the distribution of a trust fund under a deed of trust.

*Stanley Folz,* of *Sundheim, Folz & Sundheim,* with him *Fox, Rothschild, O'Brien & Frankel,* for appellees. —The judgment under the foreclosure proceedings is conclusive of the amount of the debt; what is not included in the judgment may not be paid out of the proceeds of the sale: Schnepf's App., 47 Pa. 37; Dorris v. Erwin, 101 Pa. 239; Schwan v. Kelly, 173 Pa. 65; Daly v. Maitland, 88 Pa. 384; Bronson v. Brown, 8 Pa. Dist. R. 365.

To obtain equality among bidders at a sheriff's sale, bidders and parties have a right to rely on the record as

it then exists and nothing dehors the record can be shown which would impair or affect their rights: Reading v. Hopson, 90 Pa. 494; Eckels v. Stuart, 212 Pa. 161; Horner v. Scott, 242 Pa. 432; Reisinger v. Garrett Co., 262 Pa. 530; Penna. Co. v. Halpern, 273 Pa. 451.

The provisions of the statute that distribution shall be according to "law and equity" requires that due effect be given to the equity branch of the court's power, and that, in distribution, the court must consider "not merely the legal rights but also the equities of the litigants": Claason's App., 22 Pa. 359; Souder's App., 57 Pa. 498; Selden's App., 74 Pa. 323; Tindle's App., 77 Pa. 201; Landell's App., 105 Pa. 152; Young v. Brady, 250 Pa. 584; Donnan v. Barnes, 272 Pa. 33; Harper v. Rubber Co., 284 Pa. 444.

OPINION BY MR. JUSTICE WALLING, January 6, 1930.

The Lincoln Drive Apartments Corporation, of which Louis H. Cahan was president, in the erection of the Mayfair Apartment building at Lincoln Drive and Johnson Street, Philadelphia, in March, 1925, executed a first mortgage on the property to secure an issue of bonds to the par value of $1,750,000. The Land Title & Trust Company and Harold A. Moore were named as trustees in this mortgage. This issue of bonds was placed in the hands of the American Bond & Mortgage Company, inter alia, as sales agent. Thereafter, in August, 1925, the said Lincoln Drive Apartments Corporation executed a second mortgage on the Mayfair Apartment property to secure a further issue of bonds to the par value of $900,000. The Peoples Bank & Trust Company (now The Colonial Trust Company) was made trustee for the bondholders in this second mortgage. The Mayfair Apartment did not prove an immediate financial success and because of failure to make payments of interest on the second mortgage as they accrued, a scire facias was issued thereon and judgment was entered March 7, 1928, and liquidated at $1,030,-

600.00, which included principal, interest, attorney's fees and trustee's compensation. Upon this judgment the property was sold by the sheriff on May 7, 1928, and Kenneth A. Moore, the appellant, became the purchaser on his bid of $250,000. An attorney representing certain of the second mortgage bondholders had bid $241,000. The $250,000 was paid to the sheriff and, less certain taxes and other charges, was paid to the trustee, and its proper distribution forms the subject of this litigation.

On the day of the sheriff's sale there was a default of $132,320.17 on the first mortgage, which included $102,320.17 of interest and $30,000 of principal, the latter being an amortization. While the sheriff was exposing other properties for sale and within a half hour of the time this property was sold, Moore, without notice to any other bondholder or bidder, paid the $132,320.17 to the trustee under the second mortgage, who, in turn remitted the same to the American Bond & Mortgage Company to cure the default on the first mortgage, it being authorized to receive the same. No actual money passed in the transaction. Moore hired the money from the American Bond & Mortgage Company, of which he was an officer and his father the president, by giving his note to it for the amount and received a check in return which he handed to the trustee under the second mortgage, who immediately returned it to the American Bond & Mortgage Company, as agent for the first mortgage bondholders. It is manifest that the action taken by Moore was not done to help the other bondholders, but rather to give him an unfair advantage over them. On distribution of the proceeds of the sheriff's sale under the second mortgage Moore claimed, as preferred, the $132,320.17 out of the fund and, on its disallowance by the lower court, brought this appeal.

We are clearly of the opinion that the disallowance was right. Moore's claim as a preferred creditor was based on the fact that he, as a holder of second mortgage bonds, was entitled under the terms of that mortgage

to make good the default on the first mortgage and, as a preferred creditor, to reimbursement for the amount so paid from the proceeds derived from the sheriff's sale under the second mortgage, in preference to other holders of bonds thereunder. This claim is based on article IV, section 2, of the second mortgage, which provides: "that if the mortgagor fails to pay any of the first mortgage bonds or interest thereon the trustee or any of the bondholders may make such payments, and the moneys paid 'shall be secured by this instrument as so much additional indebtedness, but by a prior and senior lien hereunder and above and before the lien and the claim of the holders of the bonds and the interest thereon secured hereby.'" Other like provisions are found therein as to reimbursements for advances for payment of insurance and taxes. A further provision relevant here is contained in article IX, section 4, which reads, inter alia: "In case of a sale under this instrument of said mortgaged property or any part thereof, the proceeds of such sale, unless otherwise provided by law, shall be applied as follows:......To the payment of all moneys advanced by holders of said bonds pursuant to the provisions of this indenture, or for any other purpose authorized or permitted by the terms of this indenture with interest, etc.; all of which items referred to [herein]......shall be so much additional indebtedness secured by this indenture and shall be included and allowed in the judgment or decree entered in any such foreclosure suit." By section 7 of article IX, it is provided that "if any defaults under the mortgage occur there shall become due a sum equivalent to outstanding principal and interest plus all advances made by bondholders......and in case the mortgagor fails to pay, the trustee may recover judgment for the whole amount due." From these and other like provisions in the mortgage it is manifest the intent was that in the event of foreclosure the advances made by the trustee or bondholders should be included in the judgment and thus be-

come matter of record. There seems to be no other way for making such advances a matter of record.

Moreover, the object of providing for payment of interest, etc., on the first mortgage by bondholders under the second is to prevent a foreclosure under the first mortgage by which the second mortgage and its bonds would be lost. The interest, etc., on the first mortgage bonds has a preference over the second mortgage and it is only fair that he who advances it to save the property should enjoy a like preference. Second mortgage bondholders are not prejudiced thereby; but by a foreclosure on the second mortgage its bondholders lose interest in making good the default under the first. We therefore conclude, under the terms of the mortgage and the reason for the preference, that it can be secured only by the advances being made before the foreclosure, so they can be included in the judgment. Not being made a part of the judgment in the instant case, it never became a lien under the second mortgage, was not discharged by the sheriff's sale and cannot participate in the fund raised thereby. Moore had no claim on the fund unless he had a lien which was divested by the sale and of that the record was the sole test. See Eckels v. Stuart, 212 Pa. 161. And at the sale so-called secret liens are of no avail: Reisinger v. Garrett S. C. Co., 262 Pa. 530, 534; Logan v. Eva, 144 Pa. 312. True, article XII, section 1, of the second mortgage, in the instant case, authorizes the trustee, bondholders or coupon holder to exercise their rights at any time and from time to time. The trouble here is, that Moore, as a bondholder, not having made the payment in question in time to have it included in the judgment, had no rights to exercise. The case is not unlike that of an attorney whose commissions cannot be collected unless included in the judgment: Mahoning County Bank's Appeal, 32 Pa. 158; and see Harper v. Consolidated Rubber Co., 284 Pa. 444; Schmidt & Friday's Appeal, 82 Pa. 524; Faulkner et al. v. Wilson (Pa.), 3 W. N. C. 339; Brown v. Brown,

8 Pa. Dist. R. 365; Washburn v. Wilkinson, 59 Cal. 538; Northwestern Mut. Life Ins. Co. v. Drown, 51 Wis. 419, 8 N. W. 237.

Again, it is fundamental in this State that the rights of all parties at a sheriff's sale of real estate depend on the record at the time of the sale: Pa. Co. for Ins. on L. & G. A. v. Halpern, 273 Pa. 451, 455; Reisinger v. Garrett S. C. Co., supra. Speaking for the court, in Hilliard v. Tustin, 172 Pa. 354, Mr. Justice FELL says: "The importance of a fixed rule by which bidders at a sheriff's sale may be guided and the rights of purchasers determined has been uniformly recognized and upheld in our cases. The purchaser was not bound to look beyond the record, and was not affected by, and could not affect others by, anything beyond it." And see Horner v. Scott, 242 Pa. 432; Coyne et al. v. Souther, 61 Pa. 455. The rule is held so firmly that an unsatisfied judgment, although paid, operates to discharge the lien of what would otherwise be a first mortgage. In Saunders v. Gould, 134 Pa. 445, Mr. Justice CLARK, speaking for the court, said: "A purchaser is not bound to look beyond the record. The payment of a prior lien, not satisfied of record, will not protect a subsequent mortgage from being discharged by the sale: Magaw v. Garrett, 25 Pa. 319; Goepp v. Gartiser, 35 Pa. 133. He [the purchaser] had a right, in the absence of notice, to assume that the liens were as they appeared upon the record, and the judgment docket was the criterion." At the time of the sale in the instant case, the $132,320.17 stood on the record as a part of the first mortgage, to that extent increasing the amount of the encumbrance not divested by the sale; hence, it has no more right to payment out of the fund raised by the sale than has the entire first mortgage debt.

Furthermore, a conclusive answer to appellant's contention is that all bidders at a sheriff's sale must stand on equal ground, as they do when the rights of all are determined by the record. Appellant had just paid the $132,320.17 and reduced the first mortgage by that

amount; he therefore knew when bidding on the property that he was not buying it subject to the full amount of the first mortgage debt and interest, as shown by the record, but subject to the mortgage reduced by what he had just paid. The other bidder understood he was buying the property subject to the full amount of the first mortgage debt and interest. Moore kept the matter of his payment secret until after the sale. If he could now get his money back out of the fund he would be just that much ahead, thus giving him as a bidder an advantage over other bidders, which the law will not permit. The rights of those claiming to participate in the proceeds of a sheriff's sale are to be determined by the status as shown by the record at the time of the sale: Indiana County Bank's Appeal, 95 Pa. 500. Chief Justice SHARSWOOD, speaking for the court, in Reading v. Hopson, 90 Pa. 494, 497, says: "At the sheriff's sale the same rule must apply equally to all the bidders, the mortgagee as well as others, without regard to what their private information may be of facts dehors the record. This puts them all upon an equal footing, as the bidder is not bound to look beyond the record, neither has he any right to affect his relation to others by any such evidence."

Under appellant's contention, the holders of the second mortgage bonds would, in effect, pay a substantial part of the first mortgage subject to which the property was bought. This cannot be permitted, as distribution of the proceeds of a sheriff's sale must be made according to law and equity: Act of June 16, 1836, P. L. 777, 2 Stewart's Purdon's Digest (13th ed.) 1580; Young to use v. Brady, 250 Pa. 584; Landell's Appeal, 105 Pa. 152; Tindle's Appeal, 77 Pa. 201; Souder's Appeal, 57 Pa. 498; Kelly's Appeal, 16 Pa. 59, 63. Moore loses nothing. He made a payment on the mortgage, subject to which he bought the property, and has that much less to pay.

The decree is affirmed and the appeal is dismissed at the cost of appellant.