## Coyne *et al. versus* Souther *et al.*

1. It is the duty of a creditor to see that his judgment is properly entered; if there be mistake, the remedy is against the prothonotary.

2. A mortgagee or subsequent encumbrancer interested in determining how to bid at a sheriff's sale, finding an entry of satisfaction apparently regular, is not bound to inquire whether it was made by order of the court.

3. In defence to a scire facias sur mortgage, the property covered by it having been sold at sheriff's sale under a junior judgment, evidence that the mortgagee had notice before the sale of an application to strike off an entry of satisfaction on the record of a judgment of the same date as the mortgage, and that the judgment was in fact not paid, was properly rejected.

March 25th 1869. Before Thompson, C. J., Read, Agnew and Sharswood, JJ. Williams, J., absent.

Error to the Court of Common Pleas of *Elk county*: No. 277, to January Term 1869.

This was a scire facias sur mortgage, issued by Henry Souther and Edward Souther, survivors of Souther, Willis & Souther, against James Coyne, with notice to Joseph Wilhelm, terre-tenant, to which the defendant Wilhelm pleaded "*nil debet* and payment," &c.

The mortgage upon which the sci. fa. was issued was given by Coyne to the plaintiffs to secure the payment of a note for $3000, and was recorded April 30th 1867.

The plaintiff gave in evidence the note and the mortgage and rested.

The defendant gave in evidence the entry of a judgment on April 30th 1867, for $200, in favor of E. J. Russ, against Coyne. On this judgment a fieri facias was issued May 16th 1867; this writ was returned to the prothonotary's office endorsed

"Now, June 1st, 1867, for value rec'd, I do hereby assign, transfer, and set over unto Bernard Weidenbrenner, the debt, int. and costs of within writ, in full. Witness my hand and seal.

Eben J. Russ, [SEAL.]

[Coyne *v.* Souther.]

" Rec'd, June 1st, 1867, debt, int. and costs, except Deputy Sheriff Malone's.

EBEN J. RUSS."

About August 1st 1867, the prothonotary entered upon the judgment-docket, on the margin of the record of the Russ judgment, " satisfied on fi. fa."

Under another judgment against Coyne, entered May 11th 1867, the real estate covered by the mortgage was sold by the sheriff, on the 5th January 1868, to John G. Hall, who conveyed it to the defendant Wilhelm.

On the 14th January 1868, a rule was granted to show cause why the satisfaction entered on the Russ judgment should not be stricken off: this rule was made absolute January 18th 1868.

The defendant offered evidence to show that notice of the application to strike off satisfaction had been given to one of the mortgagees, and that the Russ judgment was in fact not paid, which was rejected by the court.

The verdict was for the plaintiffs for $3249.51.

A rule was taken to show cause why judgment should not be entered for the defendant *non obstante veredicto ;* which, after hearing, was discharged and judgment entered for the plaintiffs upon the verdict.

The defendant took a writ of error and assigned for error the rejection of the evidence before mentioned and the entry of judgment for the plaintiffs.

*Jno. G. Hall* and *J. G. Gordon,* for plaintiffs in error, cited Act of April 11th 1856, § 1, Purd. 577, pl. 31; Act of March 27th 1865, Purd. 1397, pl. 1; Horner & McCann *v.* Hower, 3 Wright 126; Ferguson *v.* Staver, 4 Id. 216; York Bank's Appeal, 12 Casey 458; Act of April 22d 1856, Purd. 576, pl. 26; Acts of March 29th 1827, and April 15th 1834, Purd. 575, pl. 21, 22; Altman *v.* Klingensmith, 6 Watts 445; Campbell's Appeal, 5 Casey 401; Stephens' Executor's Appeal, 2 Wright 9; Carman *v.* Noble, 9 Barr 366.

*R. Brown,* with whom was *Henry Souther,* for defendants in error, cited Act of April 6th 1830, Purd. 325; Strauss' Appeal, 13 Wright 355; 1 T. & H. Pract. 628; Magaw *v.* Garrett, 1 Casey 322; Clark *v.* Stanley, 10 Barr 472; Goepp *v.* Gardiner, 11 Casey 130; Ridgway, Budd & Co.'s Appeal, 3 Harris 181; Mann's Appeal, 1 Barr 25; Bear *v.* Patterson, 3 W. & S. 233; Mehaffey's Appeal, 7 Id. 200; Zimmerman *v.* Briggans, 5 Watts 186; Lippincott *v.* Israel, 10 S. & R. 391.

The opinion of the court was delivered, May 11th 1869, by

[Coyne *v.* Souther.]

SHARSWOOD, J.—It is very important that bidders at sheriff's sales should feel well assured as to whether they are offering to buy a clear or an encumbered title. It is well known that the law as to them is *caveat emptor.* As far as possible the rules upon the subject should be so clear and intelligible as to preclude mistake if due diligence be used. In regard to the lien of judgments the judgment-docket has been provided, which as to purchasers and subsequent encumbrancers is intended to afford them certain information. It is the creditor's duty to see that his judgment is properly entered thereon; and if there is any mistake, the remedy of the party aggrieved is against the prothonotary. Hence, as has been held, if the entry is in a wrong name, so that those searching may be misled; or if it is wrongly described as to amount, or in any other material particular, third parties will always be protected in acting on the faith of it. There are few points in which the cases are more clear and consistent: Blur *v.* Patterson, 3 W. & S. 233; Mehaffy's Appeal, 7 Id. 200; Wood *v.* Reynolds, Id. 406; Mann's Appeal, 1 Barr 24; Hance's Appeal, Id. 408; Ridgway, Budd & Co.'s Appeal, 3 Harris 177; Goepp *v.* Gardiner, 11 Casey 130. It is said, however, that the prothonotary had no power to mark the judgment satisfied on the docket; that the mortgagee was bound to look further, and ascertain whether it had been so marked properly; in other words, whether the entry was true. The argument would have great force if the prothonotary in no case had authority to enter satisfaction of a judgment on the judgment-docket. But the prothonotary has such authority. Not to mention the Act of April 11th 1856, Pamph. L. 304, it will be sufficient to refer to the provision of the act entitled "An Act relating to the satisfaction of judgments in courts of record in this Commonwealth," passed March 27th 1865, Pamph. L. 52, because it has a more direct application to the case before us. It provides that, when a judgment has been entered in any court of record, "and it shall appear by the production of the record that the same has been fully paid, under or by virtue of an execution or executions issued thereon, and satisfaction has not been entered upon the judgment-index or judgment-docket of said court, it shall be the duty of the court * * * to direct the prothonotary to enter satisfaction upon the judgment-index or judgment-docket, or the record thereof." Now, if there had been an order of the court pursuant to the provisions of this act, no one can entertain a doubt that the entry upon the judgment index or docket by the prothonotary, just as the entry was made here, "Satisfied on fi. fa.," would have been perfectly regular and conclusive as to all third persons, to whom the judgment itself, regularly docketed, was constructive notice, and who, therefore, were bound to search. Finding the judgment marked "satisfied on fi. fa.," they would have a right to conclude that it

[Coyne *v.* Souther.]

was so marked by the order of the court. It would not be incumbent on them to search further to ascertain whether there was any record of such an order. If false, and made without authority, the prothonotary was responsible to whatever party might be injured thereby. The common presumption in favor of the lawfulness and regularity of the acts of a public officer applies here in all its force, *omnia presumuntur rite esse acta*. It is especially necessary that the judicial records of the country should have the benefit of this presumption in favor of those who are intrusted with the duty of making them up. To hold the contrary would be in the teeth of the familiar principle that a record imports on its face absolute verity, otherwise the Act of Assembly of March 29th 1827, § 3, Pamph. L. 155, which requires the prothonotary of every Court of Common Pleas to keep a docket, to be called the judgment-docket, instead of a convenience and security to the community would prove a snare. It is manifest, as Judge Kennedy has remarked, that the great object of having this docket is to promote the facility and certainty of ascertaining whether there are judgments against a particular individual, and what are their amounts : Bear *v.* Patterson, 3 W. & S. 237. Now, it will not be pretended that a person wishing to purchase, and desirous to know how much he may safely bid, who finds on the docket a judgment prior to a mortgage, is obliged to look further, and assure himself that it is in fact a judgment entered by the court, or by its authority ; neither, then, ought a mortgagee or subsequent encumbrancer, who is equally interested in determining how to bid, in order to protect himself, when he finds an entry of satisfaction apparently regular, bound to go further and inquire whether it was made by order of the court. This disposes of the 1st and 2d specifications of error, and renders any consideration of the 3d unnecessary.

The 4th error assigned is in these words : In rejecting the testimony of J. L. Blakely, Esq., embraced in the offer of defendants below, which is the ground of the bill of exceptions sealed for defendants. This error is not assigned according to the eighth rule adopted at Pittsburg, Sept. 6th 1852, 6 Harris 578. It should, therefore, in strictness, " be held the same as none." The offer, however, was rightly rejected. It was as follows : defendant offers to prove by this witness that he gave notice to Mr. Souther, one of the mortgagees, on the day when the rule (that is, the rule to show cause why the entry of satisfaction should not be stricken off) was applied for of such application, and that the judgment was in fact not paid. Let us see in what position the mortgagee would be placed if he was bound to pay any attention to such a notice. If he assumes that the judgment was not paid, and that, of course, the lien of his mortgage would be divested, he must bid at least to the full amount of the prior judgment and costs, and as

[Coyne *v.* Souther.]

much more as he chooses, so as to cover his mortgage, and if the property is knocked down to him, he must pay the money to the sheriff. If, when the fund comes to be distributed, it should be proved that the entry was right and the judgment paid and satisfied, then he must hold subject to his own mortgage, which would of course be merged, and the whole fund would be applied to satisfy subsequent encumbrances, or go to the defendant. In other words, he would lose the whole amount of his bid. Between two stools he must fall to the ground. The position of the mortgagee is peculiar in this, that he must decide at the peril of loss. But if such a notice were publicly given at the sale, and it was to be held that bidders would be affected by it, though in the face of the record, would any man of ordinary prudence be willing to bid a fair price when the danger of loss would be so great, and at best he would only be buying a lawsuit? The cases cited do not sustain this assignment. In The York Bank's Appeal, 12 Casey 458, it was held, that if a subsequent encumbrancer have actual notice of a judgment defectively entered on the judgment-docket before his rights attach, it is equivalent to the constructive notice of the prescribed record. That is certainly an entirely different case from this. The encumbrancer having such notice, has a right to refuse to give credit to the debtor. He need not encounter the risk. To the same effect is Stephens' Executor's Appeal, 2 Wright 14. In Magaw *v.* Garrett, 1 Casey 319, it is true that Mr. Justice Knox, in delivering the opinion of the court, said, " as the record showed the Pearson judgment at the time of the sheriff's sale to be an existing lien equal in point of time with the mortgage, and as there was no evidence tending to prove notice of its entire payment to the purchasers, the Court of Common Pleas properly held that the estate sold passed into the hands of the sheriff's vendees discharged from the mortgage-lien." But that was a mere extra-judicial dictum. There was no evidence of notice in the case, and of course, the question whether it would have made a difference did not arise.

Judgment affirmed.