| 191 | 323 |
| e207 | 1  63 |

## Samuel L. Fisler, Trustee, Appellant, *v.* Edward F. Stewart, with notice to William Laubach, Terre-tenant.

*Release—Release of lien—Execution—Notice.*

The holder of a first lien cannot release land of his debtor taken in execution on a junior judgment, so as to preserve his lien for its full amount against other land of the debtor, against the latter's will.

Where a release of lien is filed of record and on the same day the debtor files a refusal to accept the release, both appearing on the same docket, purchasers are bound to take notice of the refusal, and it is immaterial that the release did not appear in the ad sectum judgment index.

Argued March 6, 1899. Appeal, No. 219, Jan. T., 1898, by plaintiff, from judgment of C. P. Northampton Co., May T., 1897, No. 51, on verdict for terre-tenant. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Scire facias sur mortgage. Before YERKES, P. J., of the 7th judicial district, specially presiding.

At the trial it appeared that the suit was a scire facias on a mortgage given by Edward F. Stewart to Samuel Fisler, trustee, recorded December 30, 1893.

The mortgagor did not appear to defend, and the jury were sworn between the plaintiff and William Laubach, terre-tenant.

On December 27, 1893, Edward F. Stewart and Margaret H. Stewart, his wife, gave a bond, with warrant of attorney, and mortgage, in the sum of $11,000 to Henry Fulmer, on a property owned by Mrs. Stewart. On the same day, Fulmer entered judgment on the bond. On January 25, 1894, Edward F. Stewart confessed a judgment to Henry Fulmer in the sum of $5,500. On January 30, 1897, Mrs. Stewart entered judgment against her husband and issued a writ of execution under which the property described in the mortgage in suit was taken in execution and sold on February 27, 1897, to William Laubach. On February 26, 1897, Henry Fulmer filed in the office of the

prothontorary of Northampton county a release of the property described in the mortgage from the lien of his judgment, dated December 27, 1893, and at the same time sent to Edward F. Stewart a duplicate copy of this release. A few hours after he had received this duplicate copy, Edward F. Stewart returned to Henry Fulmer the duplicate with this indorsement:

" We do not ask for this. We do not wish it. We refuse to receive or accept the same."

" Witness:        (Signed)   MARGARET K. STEWART,
     " F. W. EDGAR.           EDWARD F. STEWART.
" February 26, 1897."

Prior to the sale of the sheriff on the morning of February 27, 1897, public notice was given in the sheriff's office by counsel for Samuel L. Fisler, trustee, that a release of the judgment had been filed and that in consequence the mortgage in suit would remain a lien upon the property and would not be discharged by the sale of the sheriff. In reply, counsel · for Margaret K. Stewart gave notice that the release had been repudiated. Thereupon counsel for Henry Fulmer announced that Henry Fulmer insisted that the release which had been filed of record was valid and that the property about to be sold was released from the lien of his $11,000 judgment. William Laubach was present and heard the notices before he bought.

The court instructed the jury to find a verdict in favor of the terre-tenant on the ground that the lien of the mortgage in suit had been discharged by a sheriff's sale at which the terre-tenant became the purchaser of the property described in the mortgage.

Verdict and judgment for terre-tenant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for terre-tenant.

*Edward J. Fox* and *H. J. Steele*, for appellant. A judgment is a settled adjudication of the existing debt. It is also a power by means of which the creditor may enforce his claims by the sale of the debtor's property: Nichols v. Dissler, 31 N. J. Law, 473 ; Blystone v. Blystone, 51 Pa. 373.

A release is the giving or discharging of a right of action

which a man hath or may have, or claim against another man or that which is his : Sheppard's Touchstone, 320.

The date of the sheriff's sale is the period when it is to be ascertained whether a mortgage is prior to all other liens: Clarke v. Stanley, 10 Pa. 472; Stephens's App., 38 Pa. 9; Smith's App., 47 Pa. 128.

The question can be properly raised as to the notice of the existence of the release by the purchaser, at the time of the purchase. He had both actual and constructive notice, and the record of the judgment was the proper place to which the release should have been filed: Mellon's App., 96 Pa. 475; Coyne v. Souther, 61 Pa. 455; Meigs v. Bunting, 141 Pa. 233; Hilliard v. Tustin, 172 Pa. 354; Miller v. Jacobs, 3 Watts, 477.

It is established that the judgment creditor has exclusive control over his judgment as to whether or not it shall be entered of record, so as to become a lien: Brooke v. Phillips, 83 Pa. 183; 3 Blackstone's Com. 418.

*F. W. Edgar* and *W. S. Kirkpatrick,* for appellees.—The right to prevent a judgment creditor from releasing a part of his security must be invoked before the release is executed and before the rights of others have been affected thereby : Snyder v. Crawford, 98 Pa. 414.

That is the law where a third party has an interest in the subject-matter to prevent a release of judgment. Still stronger is the case where one of the defendants has invoked the equity power of the court: Purd. Dig. title " Judgment," p. 1095, pl. 11; Roddy's App., 72 Pa. 98; Mark v. Speck, 133 Pa. 27.

It is well settled that a wife who mortgages her property for the debt of her husband, whether created at the time or existing previously, acquires the rights and privileges of a surety, and as such will be entitled to have the mortgage satisfied out of his property in exoneration of her own : Earl of Huntingdon v. Countess of Huntingdon, 3 White & Tudor's Leading Cases in Equity, *1010; Sheidle v. Weishlee, 16 Pa. 134.

It is clear that whether William Laubach was required to rely upon the ad sectum judgment index docket or to rely upon the record of the judgment itself, as contained in the continuance docket, or to rely upon the facts to be learned by inquiry of the parties, he would discover as a matter of law, as well as of fact, that the judgment had not been released.

A gift, like any other contract, executed or unexecuted, is a mutual transaction, and the acceptance on the part of the donee is necessary for its completion: Tarr v. Robinson, 158 Pa. 60.

OPINION BY MR. JUSTICE MITCHELL, May 3, 1899:

This is a scire facias on a mortgage, and defense by the terre-tenant that the mortgage was discharged by the judicial sale at which he purchased. One Fulmer was the holder of a judgment which was the first lien on the land in question, and also on other land of the mortgagor and the latter's wife; the mortgage in suit was the second lien on the land in question, which was also subject to a third lien upon which it was taken in execution. Pending this execution Fulmer filed of record with the prothonotary a release of this land from the lien of his judgment, with intent to make the mortgage in suit the first lien and thereby save it from discharge, but on the same day the mortgagor filed a refusal to accept the release, and at the sale notice was given both of the release and of the refusal to accept. This is the case, stripped of all minor and collateral matters, as it was by the learned judge below, so as to present the clear question of law, whether the holder of the first lien can release land of his debtor, taken in execution on a junior judgment, so as to preserve his lien for its full amount against other land of the debtor, against the latter's will. The learned judge below was of opinion that he could not, and he was clearly right.

The argument of appellant is really comprised in the claim that a man may do what he likes with his own, and as a release of any of a debtor's property is pro tanto a surrender or gift of part of the creditor's right, the debtor has no standing to object. But you cannot give a man what he will not take. It may be imposed upon him by superior force, as for instance his assent to a judgment against him is imposed by the law without regard to his assent in fact. But it cannot be called a gift.

A release is usually matter of contract, and in this instance it was expressly put in that form, reciting a consideration moving from the debtor, and covenanting in return not to levy upon the land, etc., provided that the lien of the judgment upon the other lands of the debtor and his wife should not be invalidated. This was in substance as well as in form a contract which re

quired the assent of the other party. As a release is usually an advantage to the debtor, his assent may be presumed, as the assent of a legatee to a legacy is presumed, but subject to his right to reject it: Tarr v. Robinson, 158 Pa. 60.

It is urged by appellant that the moment the release was filed, the status of the mortgage in suit as the first lien became fixed, and that being the state of the record the purchaser at the sale was bound by it, and the status of the property could not be altered by any act of the debtor. But this is assuming the very point in controversy. If the release alone appeared on the record it might, as already said, be presumed to have been accepted, and under the principles illustrated by Saunders v. Gould, 134 Pa. 445, Meigs v. Bunting, 141 Pa. 233, and similar cases, the purchaser would be bound by the record without regard to the conflicting notices given at the sale. But the release did not appear alone, the same record contained the repudiation of it. It is argued by the appellee, in opposition to this aspect of the claim, that the release did not appear in the ad sectum judgment index, which is kept in Northampton county, in lieu of a judgment docket under the act of 1827, and that the purchaser was not bound to look elsewhere. We need not however go into this question. The same record, the appearance docket, which gave notice of the release gave notice also of its repudiation, and if the intending bidder found one he necessarily found the other. The record therefore concluded nothing in appellant's favor, and we come back again to the starting point of the necessity of the debtor's assent.

The question, so far as we are advised, is new. We have not been furnished with any authority directly in point, nor have we found any, although the case of Fritch's Assigned Estate decided at the present term, ante, p. 283, involves somewhat similar principles. As in that case, so in this, we rest the decision on the broad ground of legal rights as to liens when not controlled by special equities. The principle that a man may do what he likes with his own has its limitations. A judgment creditor has the right to make his debt out of any or all of the property of his debtor, but he cannot proceed altogether at his own will. He cannot for instance pass over the personalty and proceed first against real estate; he cannot divide his debt so as to collect only part at a time; if he takes several parcels of

land in execution he cannot prevent the debtor from requiring the sheriff to sell them in a certain order, and on obtaining sufficient funds from part to satisfy the execution, to refrain from selling the rest. The underlying principle is that the debtor may protect his own interests so long as he does not embarrass the creditor in obtaining payment. And for such protection the debtor may rely on rights fixed by the general rules of law, or on the special equities arising on the facts. The law fixes certain orders of procedure, and the debtor has rights and equities growing out of them.

When the property in suit was levied upon and exposed to sale under a junior judgment, it was subject to incumbrances whose standing was fixed by law, both in respect to priority, and also in respect to the effect of the sale upon them. In the absence of any equity to prevent him, the debtor had the right to insist on the regular process of the law with its regular and usual result, the discharge of the liens and their payment out of the proceeds according to their legal priority. Of this right he could not be deprived, and the legal effect of the sale be changed at the whim of the first judgment holder by a release attempted to be forced upon him without his consent. If there were any equities in the judgment creditor which would justify his interference, they should have been shown, and to affect the purchaser, the aid of the court invoked before the sale. What the equities were we do not know and it is now too late to inquire. The purchaser's rights were fixed by the sale.

The third and fourth specifications of error cannot be sustained. The evidence offered as to the mortgage of plaintiff was wholly outside of the records, and could not affect the rights of the terre-tenant purchaser.

Judgment affirmed.