734

## Nolan v. Wittenmyer et ux.

*Metzger & Wickersham,* for plaintiffs; *Arthur H. Hull,* for defendant.

Fox, J., November 21, 1932.—We have before us two rules. The petition by E. M. Greene for the first of these was filed on August 11, 1932, and the rule granted was to show cause why the balance of the purchase price bid by the purchaser at a sheriff's sale should not be paid to the sheriff. The petition by Fred M. Nolan for the second was filed August 17, 1932, and the rule granted was upon the sheriff to show cause why he should not make his return according to the provisions of the Act of April 20, 1846, P. L. 411. The two rules may be taken up together.

The substance of the facts as disclosed by the pleadings is that Ethel D. S. Wittenmyer was the owner of certain real estate situated in the City of Harrisburg, against which there was a first mortgage held by the Commonwealth Trust Company which, however, is not involved in the rules; that on October 23, 1928, a judgment in the amount of $1,500 was confessed on a note given by Ethel D. S. Wittenmyer to the Wittenmyer Lumber Company and entered to No. 448, September Term, 1928; that on November 5, 1928, the said judgment was assigned of record by the said Wittenmyer Lumber Company to E. M. Greene; that on the judgment docket the same is marked "satisfied"; that on November 19, 1929, entry was made on the appearance docket to the said number and term as follows: "November 19, 1929, plaintiff satisfied in full, Wm. M. Young, attorney for E. M. Greene, assignee"; that the said William M. Young was not the attorney for the said assignee; that on November 22, 1929, the said Ethel D. S. Wittenmyer and her husband, Samuel Wittenmyer, executed and delivered to Fred M. Nolan a mortgage in the sum of $3,859, covering certain lands in the said city; that on April 29, 1932, the bond accompanying the said mortgage was entered to the above number and term, execution was issued thereon and on May 26, 1932, the said land was sold by the sheriff to the said Nolan for the sum of $1,800, and the costs and taxes as shown were $583.79, which left a balance for other creditors of $1,216.21; that on January 20, 1932, the said Greene presented a petition to this court for a rule on the said William M. Young, Ethel D. S. Wittenmyer and the Wittenmyer Lumber Company to show cause why the entry of satisfaction on the said judgment entered to No. 448, September Term, 1928, and assigned by the plaintiff therein mentioned to the said Greene should not be stricken from the record; that the said Nolan, the purchaser at the sheriff's sale, presented a receipt as provided by the Act of 1846, supra, and also a list of liens as therein required to be furnished; and that the sheriff has made no return of the sale. It is averred in his brief that the said Nolan paid the costs and taxes, to wit, $583.79.

The prothonotary keeps an appearance docket and also a judgment docket. On the appearance docket was noted, as of January 20, 1932, the motion to strike off the satisfaction; there is no reference made to this motion to strike off the satisfaction on the judgment docket.

The contention of Greene, the petitioner for the first rule, is that notice of the motion to strike off said satisfaction (which has since been stricken off by this court, to wit, on August 22, 1932) was given constructively to Nolan at the time of the sale and that therefore the appearance docket was the proper record and, the court having since stricken off the unauthorized satisfaction, the lien of the judgment held by Greene, assignee, is prior to the lien of the mortgage given to Nolan and the judgment upon the bond accompanying it, and, Nolan therefore not being entitled to any of the proceeds of the sale, the sheriff could not accept the receipt tendered under the Act of 1846, supra, but Nolan should pay the money to the sheriff. The contention of Nolan is that there was no reference made on the judgment docket showing a satisfaction of the said judgment held by the assignee Greene; that he was not bound to go any further than the judgment docket; that under the liens as shown by that docket he held the first of those discharged by the sale and that therefore he had the right upon payment of the costs and taxes to tender his receipt to the sheriff, who was bound to accept the same and make a return to the court as provided for in the said act.

The title to the said act is: "Relative to lien creditors becoming purchasers at judicial sales, and for other purposes", and it in substance provides that whenever a purchaser of real estate at sheriff's sale shall appear from the proper record to be entitled as a lien creditor to receive the whole or any part of the proceeds of the sale, it shall be the duty of the sheriff to receive the receipt of such purchaser for the amount which he would appear from the record to be entitled to receive, provided that before any purchaser shall receive the benefit of this section he shall produce to the sheriff a duly certified statement from the proper records, under the hand and seal of the proper officer, showing that he is a lien creditor entitled to receive any part of the proceeds of the sale as aforesaid. Section 2 provides that it shall be the duty of the sheriff, when he shall receive the receipt of the purchaser, to state that fact in the return of the proceedings of said sale and attach thereto a list of liens upon the property sold, which said return shall be read in open court on some day during the term to be fixed by order of court; and if the right of such purchaser to the money mentioned in said return shall be questioned or disputed by any person interested, the court shall thereupon appoint an auditor who, after due notice given to the person interested, shall make a report distributing the proceeds of such sale, or the court may direct an issue to determine the validity of said lien and all further proceedings shall be stayed; and in case it shall be determined that the purchaser was not entitled to receive the money it shall be the duty of the court to set aside the sale and direct the real estate to be resold unless the money is paid to the sheriff or other person making the sale within ten days thereafter.

The first question which is presented to us is: What is the proper record as mentioned in the first section of the act from which it shall appear that the purchaser is entitled as a lien creditor to receive the whole or any part of the proceeds of the sale?

In the case of Colonial Trust Co., Trustee, v. Lincoln Drive Apartments Corp. (Kenneth W. Moore, appellant), 299 Pa. 117, we find quite a full discussion on this subject. At page 123, the court said:

"Again, it is fundamental in this State that the rights of all parties at a sheriff's sale of real estate depend on the record at the time of the sale: Pa. Co. for Ins. on L. & G. A. v. Halpern, 273 Pa. 451, 455; Reisinger v. Garrett S. C. Co., supra. Speaking for the court, in Hilliard v. Tustin, 172 Pa. 354, Mr. Justice Fell says: 'The importance of a fixed rule by which bidders at a sheriff's sale may be guided and the rights of purchasers determined has been uniformly recognized and upheld in our cases. The purchaser was not bound to look beyond the record, and was not affected by, and could not affect others by, anything beyond it.' And see Horner v. Scott, 242 Pa. 432; Coyne et al. v. Souther, 61 Pa. 455. The rule is held so firmly that an unsatisfied judgment, although paid, operates to discharge the lien of what would otherwise be a first mortgage. In Saunders v. Gould, 134 Pa. 445, Mr. Justice Clark, speaking for the court, said: 'A purchaser is not bound to look beyond the record. The payment of a prior lien, not satisfied of record, will not protect a subsequent mortgage from being discharged by the sale: Magaw v. Garrett, 25 Pa. 319; Goepp v. Gartiser, 35 Pa. 133. He [the purchaser] had a right, in the absence of notice, to assume that the liens were as they appeared upon the record, and the *judgment docket was the criterion.*" (Italics ours.)

In the case of Meigs et al. v. Bunting et al., 141 Pa. 233, 241, 242, the Supreme Court said:

"In the present case, the record disclosed an apparent controversy between the plaintiff and defendant in the judgment, at the time of the sale. There had been a rule to open the judgment which had been discharged by the court, and subsequently reinstated by agreement of the parties, and it was still pending at the time of the sale. Even if the whole question were open, it would seem that the most that could be fairly held against the purchaser would be that, having bought with notice of the pendency of the rule, he took the chances of the court's action upon it, and as the rule was subsequently withdrawn, the judgment stood unaffected, as if it had never been assailed. But the question is not open. It was held in Coyne v. Souther, supra, that notice of a rule to strike off satisfaction of a judgment did not change the legal effect of the satisfaction while it stood on the record, and that the purchaser was not bound to pay any attention to such notice. The purchaser here had notice by the record that there was a rule to open the judgment pending, but the rule, unacted on by the court, had no greater force than the affidavit of the defendant on which it was founded. It showed no more than a dispute between the parties, to which the purchaser was not bound to give any heed. He was entitled to rely on the legal effect of the judgment so long as it stood on the record, unmodified by any action of the court."

Counsel for the petitioner, Greene, cites several cases as authority for his contention that the purchaser was bound to take notice of the attack on the satisfaction which was noted on the appearance docket. The first is that of Ely v. Lamb, 10 Pa. C. C. 209. In that case the facts were:

"Mary C. Ely obtained a judgment note against Restore B. Lamb, Oct. 2, 1886, for $2,000. Judgment was entered on the note June 3, 1887, and became a lien upon certain real estate of the defendant, which he sold in January, 1888, to Levi Swartley, the petitioner. The record shows the appearance of J. Monroe Shellenberger, for the plaintiff. On the day the judgment was entered, it was marked to the use of Frederick James by J. M. Shellenberger as attorney, apparently for Mary C. Ely. Again, on Jan. 25, 1889, the judgment was marked to the use of Levi Swartley (who, as will hereafter appear, was then owner of the land bound by it) by J. M. Shellenberger, who this time signed as attorney for Frederick James, without having entered a new appearance for him and

without filing a power of attorney. There is no attestation by the prothonotary of either of these transfers of the title to the judgment, but his consent to both is shown by the production of two papers signed by him, containing memoranda of the judgment, one of which is marked 'duplicate'."

One of the questions involved in that case was the legality of the assignment of the judgment by the attorney who made the assignment, and the assignment was stricken off because of lack of authority. The case is good authority for striking off the satisfaction of the judgment which was before this court and determined by it, resulting in the striking off of the satisfaction, but we fail to see any applicability as to the requirement of the purchaser to search beyond the judgment docket, which in the instant case reveals nothing with respect to the invalidity of the satisfaction.

The other case is that of Fisler, Trustee, v. Stewart, with notice to Laubach, 191 Pa. 323, which arose on a sci. fa. on a mortgage, and a defense by the terre tenant that the mortgage was discharged by the judicial sale at which he purchased. One Fulmer was the holder of a judgment which was the first lien on the land in question, and also on other land of the mortgagor and the latter's wife; the mortgage in suit was the second lien on the land in question, which was also subject to a third lien upon which it was taken in execution. Pending this execution, Fulmer filed of record with the prothonotary a release of this land from the lien of his judgment, with intent to make the mortgage in suit the first lien and thereby save it from discharge by the sale, but on the same day the mortgagor filed a refusal to accept the release, and at the sale notice was given both of the release and of the refusal to accept.

It was urged by the appellant that the moment the release was filed the status of the mortgage in suit as the first lien became fixed and, that being the state of the record, the purchaser at the sale was bound by it and the status of the property could not be altered by any act of the debtor.

The appellee contended in opposition to this aspect of the claim that the release did not appear in the ad sectum judgment docket under the Act of March 29, 1827, P. L. (1826-27) 154, and that the purchaser was not bound to look elsewhere. The court, at page 327, said:

"We need not however go into this question. The same record, the appearance docket, which gave notice of the release gave notice also of its repudiation, and if the intending bidder found one he necessarily found the other. The record therefore concluded nothing in appellant's favor, and we come back again to the starting point of the necessity of the debtor's assent."

We are unable to see any applicability of this case to the instant one. The case of Colonial Trust Co., Trustee, v. Lincoln Drive Apartments Corp., supra, is controlling. The judgment docket as therein said is the criterion and in the instant case, as we said before, it gives no reference to any irregularity in or attack upon the satisfaction of the judgment held by the assignee, Greene.

In the case of Nicer v. Davis, Sheriff, 17 D. & C. 16, it was held that under the Act of 1846, supra, it is the duty of the sheriff to accept the receipt of the purchaser upon payment of the costs, to state that fact in the return of the proceedings of sale, and attach thereto a list of liens upon the property sold, which return should be read in open court on the day fixed by the court. The court directed that a peremptory mandamus issue to the sheriff directing him to accept the receipt of the plaintiff upon payment of the costs, to state that fact in the return of the proceedings of sale, and to attach thereto a list of liens upon which the property was sold.

Wherefore we are of opinion that in the instant case it was the duty of the sheriff to accept the receipt tendered by the purchaser and make return to the

court as provided in the Act of 1846, supra, the costs and taxes having been paid. This being so, the payment of the money to the sheriff cannot be required.

We are not in this proceeding determining or attempting to determine the priority of liens. What we are deciding is whether or not the sheriff shall make a return to the court and whether or not the balance of the purchase price, the costs and taxes having been paid, shall be paid to the sheriff.

And now, November 21, 1932, upon due consideration, it is ordered and adjudged that the rule to show cause why the sheriff should not make a return under the provisions of the Act of April 20, 1846, P. L. 411, is made absolute, and the rule upon Fred M. Nolan to show cause why he should not pay the balance of the purchase price bid by him to the sheriff as a condition precedent to receipt from the sheriff of the deed for said premises is hereby discharged.

From Homer L. Kreider, Harrisburg, Pa.